TALLAHASSEE RAIL-ROAD COMPANY, APPELLANT, VS. ARTHUR MACON, APPELLEE.

1. The bailee of a slave upon hire is bound to bestow that degree of care and attention which a humane master would bestow on his own servant under the like circumstances.

2. When there is conflicting evidence and the verdict is not manifestly against the weight of evidence, the Court will not interpose to set aside the verdict of a jury.

This case was decided at Tallahassee.

Appeal from Leon Circuit Court.

This was an action on the case instituted by the appellee against the appellant for the recovery of the value of a negro slave hired to the appellant, who, it was alleged, died from the neglect and carelessness of the said company.

The defendant pleaded not guilty.

On the trial in the Court below the plaintiff offered as a witness Dr. George W. Betton, who testified, that, at the request of the plaintiff, he visited the negro man Esop on Saturday, the night of which day the said man Esop died. He was in a car, one side of which was open. The open side could have been closed, but, if closed, there was no opening for the air to enter. He stayed with the negro about one hour; says he ought to have been sent for earlier. The negro had not the necessary conveniences, and had to go out when required to answer the necessary calls of nature or the effects of medicine; thinks, therefore, that proper care and attention was not given to the negro. Had not seen the negro before the day he visited him, as already stated. Considered the negro to have been between forty and forty-five years old, and supposed he was worth from eight hundred to a thousand dollars.

Here plaintiff rested his case.

Defendant, to sustain the issue on its part, offered as a witness ———— Glennon, who being sworn, testified that he was employed by Mr. J. N. Whitner and was engaged in laying track on the Pensacola & Georgia Railroad. Esop, the negro in question, was one of the hands. Mr. Whitner hired Esop from the Tallahassee Railroad Company, and witness superintended for Whitner. Esop never handled the rails; he had not the strength, and was put to light work, such as ramming dirt under the cross-ties. He complained for several days and was permitted to lie up in camp. Witness did not think him much sick, as he was up and down and came in and out as he pleased. Witness directed that he should be cared for, and he received as much care and attention and fared as well as all other railroad hands when sick, including witness himself. The negro complained of a pain in the side, but he did not appear more sick than other negroes on the same work had been, and the same care and attention was given to him as to others, and as he, witness, himself had received. On the Saturday that the Doctor went to see him the negro appeared more sick than he had been, and witness directed a toddy to be given him and that he should be otherwise cared for. Pills were also given him. The negro was rather old; he showed age in his grey hairs. In the opinion of witness, he was between fifty and sixty years old, and witness did not consider him worth over three hundred dollars. Witness did not think he needed a Doctor before the day the Doctor came out to see him. Witness had been employed on the railroad (Tallahassee) for nearly two years, overseeing the hands and taking care of them, and this negro had been with him.

Defendant also offered ———— Dozier as a witness, who, being duly sworn, testified that he knew Esop. He was one

of the hands on the railroad engaged in laying track on the Pensacola and Georgia Railroad. Witness was employed for the same purpose by Mr. Whitner, who was laying the track. Esop was sick and was suffered to lie up in one of the cars employed as a camp or house for the railroad hands. The car was well covered and tight. It was open on one side only, the space left for the door, but the door could be closed easily. He was up and down, in and out when he pleased, and complained of a pain in his side. The same attention was given to him as to all other railroad hands when sick, and the same remedies were administered to him. The cook-woman was directed to attend to him if he needed attention. On the Saturday that the Doctor went to see him, Esop seemed in the morning to be quite sick, and witness told Mr. Glennon of it, who directed witness to give him a toddy, which was done. All the care and attention which could be given to the negro under the circumstances was paid, and he fared as well as the rest of us. We had no idea that he was sick enough, before the day the Doctor came out, to need a Doctor. He was not confined to his bed, but went in and out as he pleased. He, in witness' opinion, was between fifty and sixty years old, and witness does not think he was worth more than two hundred and fifty or three hundred dollars.

Here defendant rested its case.

No other testimony being offered, the jury retired to consider of their verdict, and returned into Court rendering a verdict in favor of plaintiff for six hundred dollars. Whereupon defendant moved the Court for a new trial in this cause, and assigned as grounds for said motion the following, viz:

First. The verdict is contrary to the evidence.

Second. There is no evidence to support the verdict,

there being no evidence of any carelessness or negligence on the part of defendant.

Third. There is no evidence of the damages assessed by the jury.

Fourth. The damages assessed by the jury are excessive.

Fifth. The verdict is contrary to law.

The Court overruled the motion for a new trial and gave judgment for plaintiff, from which defendant appealed.

*Archer & Papy* for appellant.

*Walker & Call* and *E. A. Hart* for appellee.

PEARSON, J., delivered the opinion of the Court.

The exceptions presented by the record in this case and the errors assigned by the appellant all rest on the refusal of the Judge in the Circuit Court to grant a new trial. The appellant insists that there was no evidence before the jury to sustain the allegations of negligence, and that the damages were excessive. These questions, which heretofore were confided to the discretion of the Judge trying the case, have, under the statute of this State, been opened to the review of this Court, and where manifest error has been committed this Court will reverse the order of the Circuit Court and require a new trial to be granted.

In this case there were but three witnesses examined— Dr. Betton, a physician, on behalf of the plaintiff, testified, that, " at the request of *Macon,* he visited the slave Esop on Saturday. He found him very sick with pneumonia. Negro was in a car, one side of which was open. The open side could be closed, but, if closed, there was no opening for the air to enter. Says he ought to have been sent for sooner. The negro had not the necessary conveniences and was under the necessity of going in and out

Tallahassee Railroad Co. vs. Macon.—Opinion of Court.

of the car according to the exigencies of his sickness; that Esop died on the night of the day witness saw him."

Glennon and Dozier, for defendants, testified, that Esop complained for several days and was suffered to lie up in camp; that they did not think him much sick; that he was up and down, in and out, when he pleased; that they directed he should be cared for, and that he received as much care and attention and fared as well as other railroad hands when sick, including witnesses themselves; that Esop appeared more sick than he had been on the Saturday the Doctor visited him, and they directed a toddy to be given him, and that he should be otherwise cared for; pills were also given him, and the cook woman had directions to attend to him. Witnesses did not think he was sick enough to need a Doctor; that the car Esop was in was tight and well covered.

The testimony of Dr. Betton was positive that the negro had not the necessary care and attention; that he was very ill and had for some time needed medical aid. The evidence of defendant's witnesses proved that none had been provided by the company. The testimony of Dr. Betton, whose services were procured by the plaintiff, was also positive that the negro needed a nurse and other necessaries required in sickness, and that neither were provided; that he was in an open car and under the necessity, in his extreme illness, only a few hours before his death, of going out into the open air. In all of these respects the witness Betton is uncontradicted by the evidence of Glennon and Dozier. These witnesses speak of their ignorance of the violence of his disease, of directions to the cook woman to attend to him—not of her obedience of the order—of his having the same care and attention that other railroad hands received. They were employees of

the company, having charge of the hands, so that they may be regarded in some degree as testifying in their own favor and to excuse their own want of attention—not entirely impartial. We would remark that the evidence seems to be very sparse on the part of defendants if they have indeed been guiltless. They do not offer to establish due care or provision for the sick in their charge, nor proper arrangements for them. As to the value of the negro, why not establish this by better testimony? There is indeed a deficiency on both sides here.

The Courts of Southern States, in adjudicating the question as to what shall constitute negligence in the bailee of a slave, have justly and humanely defined the rule to be any failure to bestow that degree of care and attention which a kind and humane master would bestow under the circumstances.—See Lumsford vs. Baylman, 10 Humphs., 267; Latimer vs. Alexander, 14 Geo., 259; Mitchell vs. Mims, 8 Texas, 6.

In McCraney, Trustee, vs. Johnston & Moore, 2 Florida Reps., 527, this Court, recognizing the general principle, said, in cases of this peculiar species of property, the American Courts, by a spirit of enlightened humanity, have extended a more enlarged protection than prevails in cases of mere chattels. Concurring in the wisdom and truth of these decisions on this point, this Court is of opinion that the facts proved by the evidence did establish negligence, and that the jury were warranted in so finding by their verdict.

In regard to the other points raised by the appellant, that the damages were excessive and not warranted by the evidence, the witness Betton gave his estimate of his value at from $800 to $1,000, Glennon and Dozier at $250 to $300. They also testified to the slave's being employed for several years on the Tallahassee Railroad, and

of the kind of work in which the negro was employed. From the facts stated, the estimates of witnesses, the jury were enabled to form their opinion of his value, and if the evidence of Dr. Betton and the conclusions resulting from the fact of the continuous employment of the slave Esop by the Tallahassee Railroad Company for several years outweighed in their minds the statements of the employees Glennon and Dozier, it was not for the Judge, after the verdict, to measure precisely the degree of weight which each particular statement of fact must perforce have on the mind of a jury, and, striking a balance between the two, to set aside the verdict or render judgment as the balance may fall on one side or the other. To carry the rule for granting new trials thus far would be to invade the province of the jury. When there is conflicting evidence and the verdict is not manifestly against the weight of evidence, the Court will not interfere to set aside the verdict of a jury. We do not say that the amount given is the same that we would have given ourselves, but there is not such conflict and variance as to cause us to set it aside.

The general principle is well established, that where an injury arises from the misconduct of another, the party who is injured has a right to recover from the injuring party for all the consequences of that injury.—See 2 Rob. Prac., 549; Rigby vs. Hewitt, 5 W. N. and G., 240.

In the case of Harrison vs. Berkley, 1 Strobart, 525, the Courts of South Carolina carried the principle to the extent of holding a person who unlawfully sold ardent spirits to a slave, by means whereof the slave became intoxicated and died, responsible to the owner of the slave for his value. In Duncan vs. Railroad Company, 2 Richardson, 616, the same principle is recognized. In Tennessee, the master is at liberty to regard the wrongful act in a bailee

as a conversion and sue in trover, or to bring an action on the case, on the ground that the wrongful act by the bailee renders him liable for all its natural or immediate consequences, and the death of the slave during the second contract of hire has been decided in these cases to be a consequence of such hiring.—See Bell vs. Cummings, 3 Sneed R., 275; Lumsford vs. Baylman, 10 Hump., 267; Latimer vs. Alexander, 14, Geo., 259; Mitchell vs. Mims, 8 Texas, 6; Yeatman vs. Hent, 6 Hump., 375.

We do not consider it necessary on this occasion to affirm the correctness of any or all of these propositions. We give them as the views of intelligent Courts on the subject of this peculiar species of property. When these questions shall be presented for decision, we shall then make up and declare our views free from commitment on either side of the question.

It is a feature in this case worthy of some note, that on neither side were instructions asked from the Court, the parties contenting themselves with leaving the questions of law and fact to the jury. Under such circumstances, we should most obviously feel less inclined to interfere with a verdict than where proper means had been used to enlighten the jury as to the law and facts of the case and to their peculiar responsibilities. Defendant might have raised the questions of law as to the sufficiency of the declaration; if the proof of plaintiff was insufficient, moved for a non-suit and asked for instructions as to either the law or facts of the case. Failing to do this, he cannot hope to find a remedy, by a motion for a new trial, in this Court.

The Court are of opinion that there was no error in the refusal of the Judge in the Court below to grant a new trial. The judgment must therefore be affirmed with costs.