THOMAS MCMURRAY AND GEORGE M. BRITTAIN, APPELLANTS, VS. ARTHUR D. BASNETT, ET UX., APPELLEES.

1. A verdict will not be set aside as against the weight of evidence when such evidence is so contradictory as to make it the duty of the jury to decide upon the credibility of the witnesses, although such evidence seems to preponderate against their finding, unless there is ground for belief that the jury acted through prejudice, passion, mistake or any other cause which should not properly control them.

2. In a motion for a new trial upon such ground where the court below has denied it, "it should be a very plain case to justify an Appellate Court in setting aside this concurrent conclusion of both court and jury."

3. In regard to excessive damages, the rule is, that in actions sounding in damages, when the law furnishes no legal rule of measurement save the discretion of the jury upon the evidence before them, courts will not disturb the verdict upon the ground of excessive

39

damages, unless it be so flagrantly improper as to evince passion, prejudice, partiality or corruption in the jury.

4. The affidavit of a juror is not admissible to impeach his verdict, on a motion for a new trial. He is not competent to show that the jurors, by agreement among themselves, severally marked on a paper such amount of damages as they saw fit, and that the quotient of the sum of these amounts divided by the number of jurors, was made their verdict.

Appeal from the Circuit Court for Duval county.
The facts of the case are stated in the opinion.

*John Earle Hartridge* for Appellants.

This was an action brought by Arthur D. Basnett and Mary H. Basnett, his wife, against Thomas McMurray and George M. Brittain, partners as McMurray & Brittain, to recover damages alleged to have been sustained at the hands of defendants, by virtue of the mare of the plaintiffs, which was kept for him at the livery stable of the defendants, being put to a stallion, and gotten with foal, without the consent of the plaintiffs, and sickness incident to the same.

To this the defendants pleaded, in addition to the general issue, that the consent of A. D. Basnett was first obtained, and no damage was sustained by the mare, and second, that the sickness of the mare was due to her having contracted the prevailing disease of epizootic.

The appellants were the defendants in the court below.

The argument of appellants in this case will be confined to—

First, the evidence; second, the charge of the court, and third, the method by which the jury reached their verdict.

Argument on the evidence:

First. Did not Thomas McMurray and George M. Brittain have the consent of A. D. Basnett?

Second. Are not the damages excessive?

In answering the first question, if the court will refer to the testimony of A. D. Basnett, they will find that A. D. Basnett, in his testimony, says that in reply to a declaration on the part of Thomas McMurray that he (Basnett) was going to allow him (McMurray) to put the mare to the stallion, that he (Basnett) replied in jest; that reply we find was in the following words: "All right!" So it is evident from Basnett's own testimony that he gave permission. Thomas McMurray, in his testimony, swears that Basnett gave him permission to put the mare to the stallion. George M. Brittain swears that he heard A. D. Basnett give Thomas McMurray permission to put the mare to the stallion. This testimony is *uncontradicted*. Thomas McMurray swears that he put the mare to the stallion on the same day that permission was given. The only way by which the appellees endeavor to escape from this testimony is by making a deduction from the period of gestation in animals of this kind, from the fallacious assumption that the mare in this case went her full time. In reply to this, Thomas McMurray says the colt came prematurely, and Solomon Harris, the appellees' own witness, says, in support of the premature birth of the colt, that it was weak and sickly, and he had to sleep with it and keep it covered with a blanket, and that in spite of these precautions it died. So that the whole testimony strongly supports the defendants' (appellants) position that *permission* was given, and the verdict is contrary to the weight of the evidence. As to the sickness of the mare with the epizootic, all of the witnesses confirm it. Even Basnett says her throat was swollen and had to be lanced.

Second.—Are not the damages excessive? Even if Thomas McMurray did not have permission to put the mare to the stallion, the damages given by the jury are excessive. Certainly only compensatory damages can be

allowed. Certain it is that more than compensation has been awarded.

The true measure of damages in this case would have been the difference between the market value of the mare that Basnett claims was damaged and the price that she afterwards actually sold for. Now, Basnett claims that he valued the mare at $200, though in another place he says he does not know what the market value was. George M. Brittain says her market value was $125 or $130. But suppose we take the most advantageous value for the appellees, viz: Mr. Basnett's *private* valuation of $200, and deduct from this the price that the mare afterwards sold for of $132.50, and we have the exact loss to Basnett, even if the defendants are guilty of acting without his permission. This would make the exact damage, giving Basnett the largest latitude, $67.50—the difference between $200 and the amount the mare sold for.

But the appellees say, Oh, this was a pet mare! Our feelings were outraged, (*as well as the mare.*) Well, I do not think in the first place that damages are allowable in a case like this for wounded feelings. But what are the facts? Were they wedded to this mare? Did they lavish their affections upon this animal? Did they hate to part with her? The evidence says no! The evidence discloses all the way that the appellees (Basnett and wife) were doing their level best to trade this mare. In the language of Basnett himself: "The mare was restless and I wanted to trade her. I was *disgusted* with her." Does this look like the mare was peculiarly valuable to Basnett and wife? Yet he wants this court to sustain a verdict against the appellees for a larger sum for this affectionate regard in which they held an animal with which they were disgusted. Again, Thomas McMurray and George Brittain both swear that Basnett was trying to trade this mare, and that Mary

## JANUARY TERM, 1882.   613

McMurray and Brittain v. Basnett et ux.—Argument of Counsel.

H. Basnett, his wife, was trying other horses with a view to selling this mare. Dr. J. D. Fernandez declares in his testimony that Basnett was *disgusted* with the mare and wanted to trade her. On this subject there is not a dissenting voice, and yet the jury gave damages on the ground that this mare had a peculiar value to appellees because of their attachment to her. In the face of the testimony the verdict is *another outrage* far greater than that of which the appellees complain.

As a matter of fact was the mare damaged? If Thomas McMurray did put the stallion to the mare without permission, should the appellees have recovered anything but nominal damages? The mere putting a stallion to a mare works no injury. In this case, Basnett, in his testimony, says, (page 32,) that he did not see the mare after she dropped the colt. Then how does he know whether she sustained any damage at all?

J. W. Burton, (page 39,) testifies that he has been dealing in horses for thirty years, and that a mare is not injured by having a colt, and that she can be worked to within two weeks of the time of dropping her colt.

Again, this was not the first time this mare had been put to the stallion. Thomas McMurray testifies that the mare had been put to every stallion in the city before she was purchased by Basnett, and was not injured or damaged; and both McMurray and Brittain testify that in this instance the mare was as valuable after she had dropped her colt as before.

A. D. Basnett's own testimony shows that he got in a pet and would not see the mare again, and sold her for $132.50, which was more than the market value placed on the mare by either McMurray or George M. Brittain, and only $67.50 less than the *private special* value to Basnett and wife, as assessed by A. D. Basnett himself.

It does seem to me that the evidence in this case not only does not support the verdict, but entitled the appellants to a verdict. And because the verdict is such a flagrant violation of the evidence, and so "*utterly utter*" in its opposition to the weight of evidence, I ask the court, with a full knowledge of the rule adopted in regard to setting aside verdicts that are contrary to the evidence, to set this verdict aside and award a new trial. For if ever there was a time and a case when the verdict was not supported by the testimony, and should be relieved against, this is the time and this is the case.

Now as to the charge of the court. That a better understanding of the charges to which exceptions were taken may be had, I would briefly refer to the declaration and evidence.

The three first counts in the declaration are for a tort, and charge the defendants (appellants) with wrongfully, secretly and fraudulently committing a trespass to the plaintiffs' mare. The fourth count charges the defendants with a trespass to the mare and a breach of duty in taking care of the colt. The fifth count charges the defendants (appellants) with a neglect of duty in feeding and keeping the mare, and alleges that from *such* neglect she became out of condition and was injured. There was not one particle of evidence adduced in this trial to support the allegation of neglect of duty in feeding and keeping the mare, nor any evidence to support the allegation of breach of duty in taking care of the colt. On the contrary, the plaintiff, in his direct examination, testified that the defendants " kept up the rig handsomely;" and on cross-examination says : " During the time my man was sick, McMurray and Brittain gave her good care." The testimony of plaintiffs' (appellees) witness, Harris, shows that every possible care was taken of the colt, and that the sickness of the mare was

JANUARY TERM, 1882. 615

McMurray and Brittain v. Basnett et ux.—Argument of Counsel.

caused by her having the epizootic. There being, then, *absolutely no evidence* before the jury tending to support the allegation of breach of duty, the court erred in giving the first charge asked by the plaintiffs (appellees), because said charge instructed the jury that the burden was upon Brittain to show that a trespass committed by his co-defendant was done under a license from the plaintiffs, and was calculated to lead the jury to think that George M. Brittain was liable for any trespass or tort committed by his *co-partner*, which is contrary to the law. " A tort is in its nature the separate act of each individual." For the same reason the court erred in refusing to give the first charge asked by defendants (appellants). The only class of torts committed by one partner which will fix the liability upon his co-partner or the firm, are such as arise out of contract, and consist in a misfeasance or non-feasance in the performance of the contract. 1 Chitty on Pleadings, marginal pages 87 and 88.

When one partner commits a trespass beyond the scope and business of the partnership, the other partners are not liable unless they sanction the transaction. Petrie vs. Lamount, 1 Car. and M., 93 ; Taylor vs. Jones, 42 N. H. 25 ; Wait's Actions and Defences, Vol. 6, page 57.

Certainly this putting the stallion to this mare was beyond the scope of the partnership, and George M. Brittain should not be liable. As there is no evidence tending to show that George M. Brittain ever sanctioned this act of McMurray, it follows that the court erred as above stated, and the verdict of the jury was contrary to the law and the evidence.

The fourth charge as by the plaintiff's (appellees), and given by the court, charges the jury as to the weight of the testimony, which is prohibited by the statute, and the jurors are the sole judges of the weight and credibility of the evidence.

The amount of the verdict in this case, in view of the exceedingly (if any) small damage sustained by the appellees, is conclusive that the jury must have been misled by the charge of the court.

Any verdict arrived at by chance will be set aside.

This is an undisputed proposition of law. The only trouble is the manner in which the attention of the court shall be called to this irregularity. I am aware that as a rule the affidavit of a juror will not be heard to impeach his own verdict, but is this affidavit, which only states the method by which the verdict was reached, such an impeachment as to preclude the same? How else can the error be pointed out except in the affidavit of a member of the jury?

In view of the points above made, I respectfully submit that a new trial should be awarded.

*Cockrell & Walker* for Appellees.

Mr. Justice VanValkenburgh delivered the opinion of the court.

In April, 1881, Arthur D. Basnett and wife brought suit against the appellants, McMurray and Brittain, proprietors and keepers of a livery, feed and sale stable in the City of Jacksonville, to recover damages alleged to have been sustained by them by reason of the improper manner of their taking charge of a certain mare left in their care for keeping.

The declaration alleges that the plaintiff, Mary H. Basnett, was the owner of a certain mare of great value, which was a gift to her from her husband, Arthur D.; that such mare was purchased by the husband from McMurray & Brittain for a family horse, and for the especial use of his said wife to drive in harness, and was highly prized by the plaintiffs, and particularly so by the said Mary H., for her

gentleness and other good and serviceable qualities, as well as on account as having been a gift from her husband, all of which was well known to the defendants; that defendants were proprietors and keepers of a livery, feed and sale stable, and as such took and received into their stable the mare, to be kept and cared for, for a reward to be paid to them by the plaintiffs; that while the mare was so in their custody and keeping the defendants wrongfully caused her to be covered by a stallion and to be got with foal, by reason whereof the mare was rendered unfit for the use for which she was purchased, and her services wholly lost to plaintiffs for four months, and the market value of the mare was depreciated in the sum of two hundred dollars, and that plaintiffs have been greatly outraged in their feelings and otherwise damaged. The declaration contains five counts.

To this the defendants plead, first, not guilty; second, that the mare was put to the stallion with the consent of the plaintiff, Arthur D. Basnett, and that she was not thereby damaged or depreciated in value; third, that plaintiffs were not deprived of her use by reason of her having been put to the stallion, but by reason of her having contracted the epizootic. These pleas are sworn to by both of the defendants.

The issue was tried before a jury in May, 1881, and they found for the plaintiffs, and assessed their damages at two hundred and fifteen dollars.

Counsel for the defendants then moved for a new trial upon the grounds—

1st. The verdict is contrary to the weight of evidence.

2d. The verdict is contrary to law.

3d. The damages are excessive.

4th. The jury arrived at their verdict by chance.

In support of the fourth ground of the motion for a new

trial the counsel introduced an affidavit of Luther Mc-Conihe, one of the jurors who heard the trial of said cause, in which he swears " that after the jury retired to consider the case that there was a difference of opinion among them as to the amount for which a verdict should be returned; that to obviate this difficulty they, the jurors, by agreement among themselves, were severally to mark on a paper such amount as they respectively saw fit, and the quotient of the sum of these amounts, divided by the number of the jurors, was to be their verdict; that this agreement was actually carried out, and that the verdict rendered by them was reached in this way."

The court, upon argument of the motion, ordered that the affidavit of McConihe be ruled out as inadmissible, and denied the motion for new trial; whereupon the counsel for defendants excepted to such rulings.

Judgment was then entered upon such verdict.

The errors assigned are as follows :

First. The court erred in overruling the appellants' motion for a new trial :

1. Because the verdict was contrary to the evidence and the law.

2. Because the damages are excessive and not warranted by the evidence.

Second. In giving the first charge asked by the plaintiffs in the court below.

Third. The court erred in refusing to give the first charge asked by the defendants.

Fourth. The court erred in giving the fourth charge asked by the plaintiffs.

Fifth. In refusing to set aside the verdict on the ground that it was arrived at by chance.

The first error assigned is, that the court erred in overruling appellants' motion for a new trial for the reason—

first, that the verdict was contrary to the evidence and the law, and second, because the damages are excessive and not warranted by the evidence.

The evidence in this case is conflicting. Arthur D. Basnett, one of the plaintiffs, testified that the defendants, McMurray & Brittain, were co-partners in keeping a stable; that he purchased the mare from them as a wedding gift to his wife; that he also bought a phæton to go with the mare as a gift; that when he purchased the mare it was understood that she was to be kept at the defendants' stable; and that he paid them twenty dollars per month to take care of the mare and phæton; that the turnout was subject to his wife's order every day, and that he never drove the mare without her permission; that he never gave either of the defendants permission to put the mare to the stallion; that McMurray frequently asked permission to put her to the stallion, and that he refused to give such permission; that on one occasion, between 19th of June and 3d of July, the question of the mare being a fine mare was raised; that McMurrray said, " yes, that he was going to allow him to put a fine stallion to the mare and give him the colt;" that he made some reply in jest; that next morning he went back to the stable to tell them that it must not be done, and McMurray said it had not been done; that shortly afterwards his suspicions were aroused, and he asked McMurray and Brittain if the mare had been put to the stallion, and they both denied it. In November the mare was taken sick, and remained ill during November and December; that it was not until about the 20th of January, 1881, he was fully convinced that the mare was with foal; that his wife was in the habit of driving the mare regularly, and was very fond of driving; that she was made a great pet of by his wife; that his wife would drive on the road and get out and walk to gather flowers, and the mare would follow her;

that he valued the mare at two hundred dollars, and that the damages to plaintiffs was three hundred dollars; that he had tried to make a trade with the defendants of this mare for one of their horses, but after trying some of them he told McMurray that their mare (Lady) suited them very well; that subsequently McMurray told him the mare was with foal; that he then sent the mare to McGinniss'. stable and had her sold. The foal was dropped early in March.

Solomon Harris, a witness on the part of the plaintiffs, testified that he worked for the defendants, curried and watered the mare, and that when she was sick she had the epizootic; that when the colt was dropped it was weak and small. The mare would not let it suck; that it took two to hold the mare and help the colt nurse; that he slept with the colt and kept it covered with a blanket to try and keep it alive, but it died.

On the part of the defendants, Thomas McMurray testified that from the time the colt was dropped he judged she was foaled between 8th day of April and August; that Basnett frequently tried to trade the mare to defendants and to others; that Basnett and his wife drove different horses of defendants with a view to trading, but did not, because defendants asked too much for their horses; that the mare was vicious and ugly, and Mrs. B. frequently became disgusted with her, and said when driving her she would not give a cent for her life. The mare was put to the stallion with Mr. B.'s permission; that he put her the same day the permission was given. It was same conversation testified to by Mr. B.; that he never denied to Mr. B. putting the mare to the stallion; that he always said he did not know whether she was with foal; that defendants now own the mare, bought her from Mr. McGinniss for one hundred and thirty-two dollars and fifty cents; that she is as valuable as she ever was; that when she was

sick she had the epizootic.   Her going to the stallion had nothing to do with her sickness; that they had her throat lanced; that at the time the stallion was put to her her market value was not over one hundred and thirty-two dollars and fifty cents; that he thought the colt came prematurely, because it was weak and poor, and had but little life. The mare was vicious, would not let the colt suck, except with great trouble and when she was held by two men..

George M. Brittain, one of the defendants, testified that he heard McMurray ask Basnett if he was willing to let him put the mare to the stallion and he (McMurray) have the colt; that Basnett consented; that this was in the conversation testified to by both Basnett and McMurray; that both plaintiffs were dissatisfied with the mare and wanted to trade her.   The market value of the mare was $125 or $130.   She is still a little affected by the epizootic.

J. W. Burton testified that a mare is not injured by having a colt; that a mare with foal can be used without injury, she can be driven up to two weeks of the time that she drops her colt; that when with foal more care has to be exercised with them.

J. D. Fernandez testified that Mr. Basnett was disgusted with the mare, and wanted to trade her; that a mare goes eleven months before dropping her colt.

Upon this evidence the jury found their verdict for the plaintiffs, and assessed their damages.   We cannot doubt the right of the appellees to recover if the proof makes out the case set up in their declaration.

The question of the loss and injury was particularly within the province of the jury, and they were empaneled to determine it.   This court has frequently said that it will not set aside a verdict as against the weight of evidence, where such evidence is so contradictory as to make it the duty of the jury to decide upon the credibility of the

witnesses, although such evidence seems to preponderate against the finding of the jury, unless there is " ground for the belief that the jury acted through prejudice, passion, mistake, or any other cause which should not properly control them." In this case, the evidence was conflicting ; it was the duty of the jury to weigh it, to harmonize it if possible, to judge of the credibility of the witnesses as they appeared upon the stand and gave their evidence, and from all the circumstances which surrounded the case to consider and determine upon their verdict. The court also, in the exercise and discharge of its duties, had the same opportunity of observing the witnesses and judging of the truth as was given to the jury; and in denying the motion for a new trial, has concurred with the jury in the verdict which they rendered.

This court says, in the case of Schultz vs. Pacific Ins. Co., 14 Fla., 73 : " It should be a very plain case to justify an appellate court in setting aside this concurrent conclusion of both court and jury, upon the ground that their action was contrary to the evidence or weight of evidence." We have here not only the finding of the jury upon the facts as they were presented to them, but also the judgment of the court that the verdict so rendered was just and proper. (Tall. R. R. Co., 8 Fla., 299 ; Pen. & Ga. R. R. Co. vs. Nash, 12 Fla., 497.; Wilson vs. Dibble; 14 Fla., 47 ; Nichols & Gautier vs. Mooring, 16 Fla., 76 ; Coker vs. Merritt, 16 Fla., 416 ; Sherman vs. The State, 17 Fla., 888.) This court has decided this point so often that it has become a little monotonous.

The appellants, however, claim that the damages are excessive, and therefore the court should have granted a new trial. The same reasons apply why this court should not interfere upon that ground as upon the ground that the verdict is against the weight of evidence. The only proof

directly upon the subject of damages, and in which the amount is named, is that of Basnett, who testifies that they were three hundred dollars. From the other proof the jury would have been justified in rendering a smaller verdict if they had seen fit to do so; and we cannot say, but that from the evidence as it appears to us upon the record, we should have been better satisfied with a verdict for a less amount of damages. As is well said in Tallahassee R. R. Co. vs. Macon, 8 Fla., 299, it is not for this court, " after verdict, to measure precisely the degree of weight which each particular statement of fact must perforce have on the mind of a jury, and, striking a balance between the two, to set aside the verdict or render judgment as the balance may fall on one side or the other. To carry the rule for granting new trials thus far would be to invade the province of the jury." In the case of The Indianapolis Sun Co. vs. Horrell, 53 Ind., 527, the court say " the judgment of the jury, not of the court, is to determine the just measure of damages; but it must be their judgment, unbiased by prejudice, uninfluenced by corruption or undue means." In Crose vs. Rutledge, 81 Ill., 266, which was an action for the seduction of plaintiff's wife, where the proof showed that the plaintiff was of low character, the court say, " As to the damages, we think, considering the character of the plaintiff as developed by the testimony, he was not in a position to demand and receive from a jury so large an amount, but we cannot say it is so excessive as to inspire a belief it was the result of passion or prejudice or partiality."

In Solen vs. V. and T. R. R. Co., 13 Nev., 106, upon this question of excessive damages the court, in their opinion, say : " There being no absolute fixed legal rule of compensation, appellate courts ought not interfere with the verdict unless it clearly appears that there has been such a mistake

of the principles upon which the damages were estimated, or some improper motive or bias indicating passion or prejudice upon the part of the jury. The amount of the verdict, although perhaps greater than we would have given, is not, in our opinion, inconsistent with the exercise of an honest judgment upon the part of the jury, whose special province it was to determine this question."

In the case of Kiff vs. Youmans, 20 Hun. N. Y., S. C., 123, the court say: "Again, the defendant insists that the verdict was excessive. While the general term has a right to review the motion for a new trial upon this ground, it must be admitted that the judge who tried the case is better qualified to form a correct opinion. All witnesses look alike on paper. The question of as to who should be believed, in case of conflicting evidence, is better decided by the jury and by the judge who presided at the trial. * * As long as the system of jury trials is maintained, the courts should only interfere in cases where the verdict shows prejudice or passion or the like."

In Worster vs. The Proprietor of the Canal Bridge, in 16 Pickering, 541, the court use this language: "We are of opinion that the damages assessed are not so excessive and unreasonable as to warrant the interference of the court in a matter which is peculiarly within the province of the jury. In all cases where there is no rule of law regulating the assessment of damages, and the amount does not depend on computation, the judgment of the jury, and not the opinion of the court, is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. * * * We do not consider whether or not we should have assessed the same amount of damages if the case had been submitted to the court to decide, for in a case like

the present men of sound judgment may differ not a little in estimating the compensation which the circumstances of the injury would justify; and it is the judgment of the jury, and not that of the court, which must govern. To justify the interposition of the court the damages must be manifestly exorbitant."

In the case of Miss. C. R. R. Co. vs. Carruth, 51 Miss.; 77, the court, in its opinion, lays down the following rules: "It was urged on the motion for a new trial that the damages found by the jury were excessive. The rule on this subject is, that in actions sounding in damages, where the law furnishes no legal rule of measurement save the discretion of the jury upon the evidence before them, courts will not disturb the verdict upon the ground of excessive damages, unless it be so flagrantly improper as to evince passion, prejudice, partiality or corruption in the jury, upon mere matter of damages, where different minds might and probably would arrive at different results, and nothing inconsistent with an honest exercise of judgment appears, the verdict should be left as the jury found it." See also 25 Cal., 461; 23 Wis., 195.

The second error assigned is that the court erred in giving the instructions first asked by the appellees, which is in the following language: "If the jury are satisfied from the evidence in this case that the mare, the subject-matter in this suit, was put to a stallion by defendant, McMurray, then the burden is upon each defendant to show to the satisfaction of the jury that such putting was done by the consent of the plaintiffs."

The mare was purchased by Basnett of the appellants as a gift to his wife, who was found of driving, and did so regularly. She was made a great pet of by her owner.

The appellants kept a livery and sale stable, and, at the time of the purchase of the mare of them, it was the un-

derstanding between them and Basnett that they were to keep and care for her, for which care and attention Basnett was to, and did, pay them a stipulated sum per month. The object of the purchase was to furnish Mrs. B. the means of driving daily if she desired.

These facts the appellants well understood, and they were bound to take such care of the mare as would keep her in condition to be used by her owner in the manner desired. The appellees claim that the appellants have not kept her in such condition, but that, by their wrongful act, they have rendered her unfit for the service for which she was purchased. They bring this action to recover their damages for thus failing to take such care of her as they promised and agreed when Basnett purchased the mare of them. In the light of these facts we cannot see how there was error in this charge of the Judge.

The act of one of the appellants is the act of both, and the consent, if given by Basnett to one, would justify them in what they did. The language of the Judge in his ruling is that "the burden is upon each defendant to show," &c. This may be a clerical error in the record, but it can make no material difference, as it could not have misled the jury. Had it been "such defendants," or "the defendants," the result must have been the same, as we think the act of one of these parties in this case bound the other. It was a wrongful breach of the contract made between the parties at the time of the purchase of the mare. Story on Part., §166; Linton vs. Hunley, 14 Gray, 191; Craker vs. Chicago and N. W. R. R. Co., 36 Wis., 657; Loomis vs. Barker, 69 Ill., 360; DuVant vs. Rogers, 87 Ill., 508; Chitty's Pleadings, 92.

The third error assigned by the appellants is sufficiently answered by what we have said in reference to the second assigned error. If the partners were liable to the appellees

for the wrongful act done, then the court did not err in refusing to charge as requested by the appellants.

. The fourth error assigned is to a portion of the charge of the court in which we can see no error. The court charges in effect that, in considering the proof in regard to the consent said to have been given by Basnett, that direct and circumstantial evidence is entitled to greater weight than that which is uncertain and indefinite ; and, further, that in determining the question of consent the jury must look to the period when the colt was dropped, and regard the period of gestation as circumstances tending to show when the horse was put to the mare. The whole charge seems to have presented the case fairly to the jury, and had no tendency to mislead them in forming their opinion.

The fifth and last error assigned is in refusing to set aside the verdict upon the ground that it was arrived at by chance. To support the motion for a new trial upon this ground the appellants introduced and relied upon an affidavit made by one of the jurors who tried the cause. This affidavit the court very properly ruled out for the reason that a juror could not be heard upon what transpired within the jury room, especially to prove any irregularities upon the part of such jury. In the case of Godwin vs. Bryan, 16 Fla., 396, this court has said that " the prevailing rule of law is that the affidavits of jurors, as to their conduct and deliberations in the jury room, are not received for the purpose of impeaching their verdict." In Coker & Scheiffer vs. Hays, 16 Fla., 368, this court also say: " The oath of a juror is not admissible to impeach his verdict." This is the rule as adopted in this State, and which also prevails in many other States, therefore there was no error in refusing to consider the affidavit of the juror as to their " conduct and deliberations in the jury room." The affidavit of a juror is not admissible to impeach his verdict on

a motion for a new trial. · Reed vs. Thompson, 88 Ill., 245·; C. & O. R. R. Co. vs. Patton, 9 W. V., 648 ; State Lou. vs. Fruge, 28 Lou. Ann., 657 ; Stanley vs. Sutherland, 54 Ind., 339 ; Lucas vs. Cannon, 13 Bush (Ky.), 650 ; State vs. Pike, 65 Maine, 111.   In Woodward vs. Leavitt, 107 Mass., 453, this question of the admission of the affidavits of jurors to impeach their verdict is very fully discussed, and the conclusion arrived at is the same as in the cases above cited.

Judgment affirmed.