Coe, *Appellant*, v. Griggs.

**Lost Quarter Section Corner.** Where a quarter section corner had been lost, a survey made by a county surveyor in accordance with the government field notes, was admitted in evidence to establish its true location, notwithstanding the mode provided by statute, (Wag. Stat., 1312, § 31,) for establishing such corners had not been followed.

*Appeal from Lewis Circuit Court.*—Hon. John C. Anderson, Judge.

Reversed.

*Wilson & Cover* for appellant.

*Blair & Marchand* for respondent.

Henry, J.—This is an action to recover damages for trespasses alleged to have been committed by defendant on plaintiff's land. It was admitted that plaintiff owned the northwest and defendant the northeast quarter of the southwest quarter of section 11, township 60, range 11, in Knox county.

The following evidence was adduced by plaintiff: The plaintiff testified: "I have lived near the land on which the trespass is complained of since 1843. I am acquainted with the government corners of the section. The first time it was surveyed by a county surveyor, was in April, 1857; it was surveyed at that time by James March, for defendant. He was the county surveyor at the time he surveyed the section. He ran the section line to ascertain the lines of the southeast quarter of the section which was owned by defendant at the time."

James March testified: "I was county surveyor of Knox county in 1857. In April of that year I was employed by defendant to survey southeast quarter of section 11, township 60, range 11 west. At the time I ran the lines I had the government field notes, and surveyed accord-

ing to them. · I have a book in my hand that I used at the time in surveying, that contains a plat of surveys and indicates how I made it. To ascertain the boundary of said southeast quarter, I commenced at the southeast corner of section 11, and ran north one-half mile, and got that corner, and ran through the center of the section west, and on west side of section found a mound. I ran north line of section and located corner; I then ran a line dividing section from north to south. I found a corner on south side of section 11, and put a stone there. At the center of section I planted a hard sand-stone. The section, according to the field notes and government survey, was more than full. Through the center of the section east and west it was eighty chains and thirty-five links. On the south side of section from southeast corner to southwest corner, it was eighty-one chains and one link by government survey."

John G. Harriett testified: "In 1873, and since then, I have been the deputy county surveyor of Knox county. A short time before this suit was commenced I made a survey of the land in question for the plaintiff. At the time I made the survey I had copies of government field notes and made survey and ran line by them. I commenced survey at northwest corner of section, at government corner, and then ran south on west line three-fourths of a mile and there found a rock, then ran back north to northwest corner of southwest quarter, then ran east to center of section 11, and there found a rock; I then ran back west one-half the distance from the center of the section to west line and established a corner. I then ran a line south one-fourth of a mile and established the southeast corner of the plaintiff's land in question. This is all the survey I made of said southwest quarter. In running the line north and south between the land of plaintiff and defendant, I aimed to run it parallel with the line I ran on west side of section."

Plaintiff re-called and testified: "I came here in 1843, I know where southwest quarter of section 11 is located.

I know government corners. I know southwest corner of section 11. The land was first surveyed by March, then by Rinehart. I was present when Harriett, the deputy county surveyor, made his survey. There was a government corner at the northwest corner of section 11. Harriett commenced to make his survey at that corner and ran south three-fourths of a mile and struck a rock at the southwest corner of my land in question. The rock or corner had been put there years ago by J. March, county surveyor, when he surveyed Mr. Taylor's land in section 10, the section west of 11. From this corner Mr. Harriett ran north to the northwest corner of the land in question; he then ran east one-half mile to the center of the section and struck the corner established by March in 1857. He then ran west half of the distance from corner of center of section to west side and then ran south one-fourth of a mile to the southeast corner of the land in question and set a stake for that corner."

The plaintiff offered evidence tending to prove that defendant cut timber west of the line surveyed by Harriett, between plaintiff and defendant's land, from five to forty-two yards, and of the value of $50. Here the plaintiff rested, which was all the evidence in the case.

The court thereupon, at defendant's request, declared the law to be that, upon the evidence, plaintiff could not recover, and the plaintiff then took a non-suit with leave to move to set aside. In due time he filed his motion, which was overruled, and he has appealed from the judgment rendered in favor of defendant.

We do not know upon what theory the demurrer was sustained. Respondent's counsel has filed no brief. It appears from the testimony of the surveyor, March, that, for defendant, he surveyed the southeast quarter of this section then owned by defendant in order to ascertain its boundaries, in 1857; that the survey was made according to the government field notes. He commenced that survey at the southeast corner of the section, then ran north a half mile

and got that corner, and then through the center of the section, next, and, on the west side of section, found a mound. After running north line of section and locating corner, then ran a line dividing the section from north to south, finding a corner on south side and putting a stone there. At the center of the section he planted a hard sandstone. The section contained a little over 640 acres. From east to west it was eighty chains and thirty-five links through the center of the section. The south line was eighty-one chains and one link, by government survey. Harriett, in 1873, made a survey of the land in question for plaintiff, commencing the survey at the northwest corner of the section, which plaintiff testifies he knew to be the government corner. The location of the southeast and northwest corners of the section seems to have been known, and the two surveys, testified to, do not materially vary from each other.

The quarter section corner seems to have been lost, and while the mode prescribed by the statute, section 31, Wagner's Statute, 1312, for establishing decayed or destroyed quarter section corners, was not pursued, yet both surveys divided the section by a line running north and south, making the subdivisions very nearly equal in area. The section was eighty chains and thirty-five links from the eastern to the western line, through the center, and eighty-one chains and one link on the south line. If all the land in the section, in excess of 640 acres, had been given to the northwest and southwest quarters, it would have made a difference of but thirty-five links in the center, and sixty-six feet and one link on the south line ; and, whether the lost corner of the quarter section was established in pursuance of the statute or in the mode adopted by the two surveyors, if all the excess of land in the north one-half of this quarter had been given to defendant, it could not possibly have thrown defendant's west line as far as 126 feet west of where it was located by those surveys. The evi-

dence tended to prove that the timber was cut from five to forty-two yards west of that line.

We think that the court erred in sustaining the demurrer to the evidence, and the judgment is reversed and the cause remanded. All concur.