# DECISIONS

## OF THE

# SUPREME COURT OF FLORIDA.

## JUNE TERM, A. D. 1887.

WILLIAM MILLER ET AL., APPELLANTS, VS. FOUNTAIN J. WHITE, APPELLEE.

1. The survey actually made by the United States Government, and according to which it sold the land, controls as between parties to an action of ejectment covering such land.

2. Authorities as to the effect of surveys by the General Government of its domain where sale thereof has been made according to such surveys collated.

3. Where the verdict is not supported by the testimony, but contrary to it, a new trial should be granted.

Appeal from the Circuit Court for Walton county.

The facts of the case are stated in the opinion.

*Maxwell & Mallory* for Appellants.

*Daniel Campbell* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court:

William Miller and B. Colvin, the appellants, sued the appellee, in an action of ejectment, to recover lot 1, and the west half of the SE¼ of section 18, and lot 1 in section 19, T. 2, S., R. 18, W., containing 190 acres, and situate in Walton county. White pleaded that "he is not in posses-

sion of the lands described," and disclaimed all right, title and interest therein, and the plaintiffs joined issue upon the plea denying possession. The jury found for the defendant, and the court having refused a new trial moved for by the plaintiffs judgment was entered accordingly and the plaintiffs appealed.

Upon the trial the plaintiffs read in evidence a deed of conveyance of said land in fee from Emory F. Skinner and wife to plaintiffs, bearing date April 21st, 1884, with cov. enant of general warranty and other usual covenants, and also introduced in evidence a map or plat of sections 18 and 19, T. 2, S., R. 18, W., duly certified by the Commis. sioner ot the General Land Office of the United States, and copies of certain field notes of part of the survey of said lands.

Section 18 lies immediately north of section 19.

The plat put in evidence represents the lands in controversy as lying north of the Choctawhatchie river. The field notes introduced are the traverse of the course of the Choctawhatchie river along the north bank through said sections. They represent the survey of the course of the river in section nineteen as having been commenced at the northeast corner of this section and pursue its meanderings, which, down or with the flow ot the river, are generally speaking first in a southwesterly and then in a northwest. erly course. They also represent the survey of the course of the river in section 18, as having been begun on the west side of the section, thirty-four chains and fifty-eight links south of its northwest corner and pursued up stream. They give its meanderings, whose general course followed up stream is southeasterly for some distance, and then nearly easterly. The field notes and the maps or plat sustain each other, the latter representing the river as located in the sections according to the notes of the survey of its course.

Miller, one of the plaintiffs, testified as follows: "Mr. Colvin and myself own the lands described in the declaration, and said lands lie on the north side of Choctawhatchie river as shown by the map in evidence and by the field notes of the surveyor, and are bounded on the south by said river. That said map and field notes show said lands extending along the river continuously from the point on said river where the east line of section eighteen (18) touches the river, seventy-nine (79) chains south of N. E. corner of section 18, to the west boundary of said section, 34.55 chains south of N. W. corner of section 18 ; that the field notes compared with the map correspond with said map, and the notes of the traverse of said river correspond with the course of the river as shown in the map. That the course of the river bounds said lands of Miller & Colvin continuously for two miles and 24 chains ; that the survey of said lands as shown by the field notes was from the north not from the south, and only extended to the river ; that the house and premises occupied by defendant White lie on the north bank of the river below the point where Bunker Creek [which it may be here stated is on the south side of the Choctawhatchie] runs out of the river, and are above the point at the head of Old River and Cypress Top Channel. (Witness here pointed out these on the map as being the two just above South river, Cypress being the middle one.) That he is a practical surveyor and familiar with tracing U. S. land lines and surveys, and is well acquainted with the river and localities of said lands, and that from his knowledge of these they conform to the map and field notes in evidence."

The defendant to maintain his plea introduced N. J. McKinnon, who testified as follows: "I am county surveyor.

At the instance of F. J. White (the defendant) I ran certain lines with a view to locate parts of sections 18 and 19, T. 2, S. R. 18, W.    I commenced at the southwest corner of section 19 as shown to me by Mr. White, and ran east one half mile, thence north one mile, thence west one half mile, at which point I should have been at the northwest corner of section 19, but could not locate it as it was in the river; thence north six chains.    I found no marks, lines, or corners after I left south line of section 18, except a few on the range line I crossed to the north side of the river. According to my survey the defendant White is not in possession of lot 1, section 18, or any other described in the plaintiffs' declaration.    The line passing through the centre of section 19 would pass to the east of the head of Bunker Creek about two chains, but on the United States plat, in evidence, the line would strike Bunker Creek more than a quarter of a mile west of the line I surveyed.    In making my survey I found well defined land marks and was governed by them.    I found land marks to the swamp on range line.    According to my survey section 19 crossed the river.    On the U. S. plat the three rivers are represented as changing at said point, and range line crosses the heads of these rivers, but according to my survey it crosses the river one quarter of a mile east of their heads.    The south mouth leaves the other river about four hundred yards from where the other river leaves.    I am acquainted with the surface of the country and surroundings and it is not as represented by the U. S. plat." Upon cross examination he testified :  " I have compared field notes of the U. S. Land Office in evidence with the plat in evidence and find that the field notes traced the lines from 1.12–6.7 south to the river and from 7.18–8.17 south to the river, and that the traverse of the river by the field notes corresponds with the course of the river as shown by the U. S. plat·

The field notes show that the U. S. survey of lands north of the river was from north to south. I did not survey the land north of the river, nor make any survey but what I have before stated, nor did I survey the land in the declaration described."

The defendant testified that he was not on the land claimed by plaintiffs. That he was with McKinnon and A. L. McCaskill, when each of them made a survey of the land in question; that both of them made a survey north of the river, and according to their surveys he is not on the land. That his improvements are on lots 2 and 3 in S.W.¼ of section 18, and of the river. That the plat introduced by plaintiffs is not correct by any means. The distance from the head of South river to the head of Cypress Top and Old river is something over a quarter of a mile. I own the lands on the north of the river from Bunker to and including lot 1 in section 18, as represented on the U. S. plat in evidence, but that plat is incorrect. "According to that plat I am in possession of lot 1, in section 18. My improvements are on the north side of the river, between the head of Bunker and the head of Cypress and Old (or Indian) rivers."

In rebuttal, Miller testifies that the islands at the separation of the three rivers are not as shown on the plat. There is land next to Old river not extending up the river as far as the other by two or three hundred yards, but this is probably due to change made by constant wearing away of the head of the land by the current, which is going on all the time and probably has been since 1848, the date of the survey.

There was a verdict and judgment for the defendant and the plantiffs' motion for a new trial was refused.

A careful consideration of the testimony introduced by

the defendant will discover that there is nothing in it which can be held to throw any doubt upon the correctness of the map or plat of the U. S. survey or of the field notes. McKinnon does not state that he began his survey at what he knew to be the southwest corner of section nineteen ; he says he began it at the southwest corner *as* shown to him by Mr. White, the defendant, and Mr. White does not testify that this point was such corner, and neither of them states any facts to prove that it was. So, then, he starts his survey south of the river at a point which is not established as the real corner according to the governmental survey of the section. It is clear, moreover, that if McKinnon made any survey *north* of the Choctawhatchie river, *where the lands in controversy* lie, he did nothing more than to run north six chains from what he claims was the northwest corner of section 19, which corner he says he did not locate because it was in the river. Assuming that he did run this line all we know about it is that he found no marks, lines or corners after leaving the south line of section 18, " except a few on the range line," and we are not informed as to what few marks, lines or corners he did find. Upon the cross examination he says he did not survey the lands north of the river, nor make any survey but what he had before stated, nor survey the land described in the declaration. The survey " before stated " was from the assumed southwest corner of section 19, east, a half mile, then north a mile and thence west a half mile, and thence north the six chains just mentioned. He admits that the plat is in accordance with the field notes, and that the traverse of the river by the field notes corresponds with the course of the river as shown by the plat. In the absence of any showing that the field notes are incorrect (if any such showing can be made) we must assume that they are correct, and that the map represents the lands correctly and according to the

survey actually made of them by the United States. The defendant himself admits that *according to the plat* he is in possession of lot 1 in section 18, and even owns the lands on the north of the river inclusive of this lot, but this plat he says is incorrect, yet he gives no legal evidence to sustain his opinion.

It must be taken as established that the survey by the United States of the lands north of the river was from the north to the south.

In so far as McKinnon makes his survey south of the river the basis of any opinion or testimony as to the location or possession of the land north of the river, it is evident from the character of that survey that it is not entitled to any weight as such a basis.

According to the testimony the verdict should have been for the plaintiffs. There was no legal evidence of any inaccuracy in the plat, or field notes in question. It is admitted that the former is drawn according to the latter. The lands in controversy lie north of the river and no survey of them has been made by McKinnon, or is proved to have been made on behalf of the defendant. The survey actually made by the U. S. Government, and according to which the lands were sold, whatever it is, controls as between these parties. The effect of such surveys is shown by the authorities given below. Bates vs. Ill. C. R., 1st Black., 204; Greer vs. Mezes, 24 How., 268; Liddon vs. Hodnett, 22 Fla., 454; Slack vs. Ovellon, 13 La., 56; 33 Am. Dec., 551; Lindsay vs. Hawks, 2 Blk., 554; Johnson vs. Jones, 1 Blk., 210; Billingsley vs. Bates, 30 Ala., 376; Pruner vs. Brisbin, 98 Penn. St., 202; Goodman vs. Myrick, 5 Oregon, 65; Lewis vs. Lewis, 4 ib., 177; Martin vs. Carlin, 19 Wis., 477; Neff vs. Paddock, 26 ib., 546; Vroman vs.

Dewey, 23 ib., 530; McClintock vs. Rogers, 11 Ill., 279; Coe vs. Griggs, 79 Mo., 35; R. R. Co. vs. Schurmeir, 7 Wall., 272.

Judgment reversed and new trial granted.