CLARK & LOFTUS, PLAINTIFFS IN ERROR, VS. FRANK W. POPE, DEFENDANT IN ERROR.

1. Where there is a conflict between the evidence introduced by the plaintiff and that offered by the defendant, the settlement of the question belongs to the province of the jury; and under a well settled rule on this subject the appellate court will not disturb the verdict of the jury.

2. While it is true that a verdict of a jury unsupported by evidence, or against the evidence, will not be sustained, yet a verdict cannot be set aside on the ground that it is excessive and not justified by the evidence, where a witness, who is uncontradicted, testifies for plaintiff that the amount due from defendant is larger than the amount of the verdict rendered.

3. An offer of settlement made by plaintiff, but not accepted by defendant, is not binding on either party, and it is incumbent on plaintiff after such offer to establish by evidence the amount of his demand against the defendant.

Writ of Error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*R. B. Archibald* for Plaintiff in Error.

*J. E. Hartridge* for Defendant in Error.

MABRY, J.:

The defendant in error commenced a suit in September, A. D. 1887, in the Circuit Court for Duval county, against plaintiff in error to recover the sum of one thousand and five dollars, alleged to be due for services rendered as an attorney at law. The material averments of the declaration are as follows: "For that the said defendants are indebted to plaintiff in the sum of one thousand and five dollars, for money payable by defendants to plaintiff, for legal services as an attorney at law, done and rendered by plaintiff for defendants at their request."

"And in a like sum for work done and material provided by plaintiff for defendants, at their request."

"And in like sum for money received by defendants for the use of the plaintiffs."

"And in like sum for money found to be due from defendants to plaintiff on an account stated between them. And in consideration of the premises said defendants promised to pay said several sums of money to the plaintiff on request, yet they have disregarded

their said promises and hath not paid the same, or any part thereof, to plaintiff's damage $1,300." A bill of particulars for $1,005 is attached to the declaration. To all the counts of the declaration defendants pleaded that they "never were indebted as alleged," and issue was joined thereon. The cause was tried in said court in May, A. D. 1888, and a verdict for seven hundred and eighty dollars rendered in favor of plaintiff. Defendants below made a motion for a new trial, assigning three grounds, viz: First, the "verdict had no basis in the evidence to rest upon, and was contrary thereto." Second, said "verdict was contrary to the law and the charge of the court;" and, third, "said verdict was excessive, and was not justified by the evidence." This motion was overruled and defendants brought the case here upon writ of error.

The only questions presented for our review are those contained in the motion for a new trial made in the Circuit Court. The testimony introduced on the trial and the instructions of the court to the jury are before us by bill of exceptions, but no objections were made to any part of the evidence, nor were any exceptions taken to any part of the instructions to the jury.

The plaintiff in error testified as a witness in his behalf that he was a practicing lawyer, and that in July, 1887, Mr. Clark, of the firm of Clark & Loftus, defendants, came into his office in Jacksonville, Florida, with insurance policies aggregating in amount fifteen thousand dollars, and said the insurance companies that issued the policies refused to pay more than nine or

ten thousand dollars on a loss by fire a short time previous ; that Clark made a statement of the matter to witness, and wanted his counsel. Witness advised Clark not to settle for such sum, as the policies could be collected ; that after advising with witness as a lawyer, Clark placed the claims against the insurance companies in his hands, as an attorney, for collection ; that witness proceeded to prepare proofs of loss, which were very voluminous, and it took about a week's work for himself and clerk to furnish each company with proof of loss, and copy for defendants ; that this involved many visits to the place of business of defendants, and an examination of their firm books. When proofs were made in proper form they were sent by mail to the insurance companies by witness, with a demand for payment. This was written in the name of defendants, as requested by Clark ; that soon after the proofs were forwarded to the companies, the adjusters returned to Jacksonville, and Mr. Clark came to the office of witness and informed him that they had offered thirteen thousand dollars as a settlement, and asked witness' advice about it. Witness advised that the claims were good for fifteen thousand dollars. Clark said he thought he had better take it, as different parties were suing him, and it would injure his credit, and that thirteen thousand dollars would be better for him now than fifteen thousand dollars in the future. Witness told him that, in view of the case, he could take the thirteen thousand dollars if he wished, but that fifteen thousand dollars could be col-

lected, and thereupon Clark decided to take the thirteen thousand dollars, and asked for the policies, and witness' clerk went to the safe, got them out and gave them to him, not suspecting that Clark intended to play any trick, and supposing he would pay witness' fee when the money was collected, the policies were handed to Clark. When Clark first came to consult with witness, he asked what he was to be charged. Witness told him that the usual charge was ten *per cent.*, but as this claim was for a large amount he would not charge so much. Witness did not say what the charge would be, because he did not know how much work was involved in it. Clark paid witness fifty dollars on account after adjusters had settled with him. He asked witness what his charge was, and witness told him that he would take six hundred and fifty dollars. Witness then offered to take six hundred and fifty dollars because he wished to be very reasonable, having done some business before for defendants, and thinking it would be paid without any trouble. When Clark first consulted witness, he said the insurance companies had offered between nine and ten thousand dollars; that they demanded a reduction of twenty *per cent.*, or three thousand dollars, for deterioration of furniture, one thousand dollars for property stolen the night of the fire, and over one thousand dollars for property saved. After advising with witness fully about it, Clark decided not to take it, and put the policies in witness' hands for collection. When proofs were sent to companies by due course, the adjusters returned to Jacksonville and offered thirteen

thousand dollars.    The entire matter was conducted through witness, and on his advice.

Columbus B. Smith testified on behalf of plaintiff, that he was present when Mr. Clark came to see Mr. Pope in reference to the insurance claims ; that he heard Mr. Clark speak to Mr. Pope in reference to his charges, and also heard Mr. Pope say the regular charge was ten *per cent.*, but he would not charge Mr. Clark that much.    Mr. Clark came to the office a number of times.    Witness was about a week type-writing the proofs, as they were very voluminous.    Witness was in the office when Mr. Clark came, after the proofs had been sent off and payment demanded.    Mr. Clark said the adjusters had returned, and offered thirteen thousand dollars.    Witness was not right close to them, but not far off ; did not hear all of the conversation between them, but heard what he stated. Mr. Pope asked witness to unlock the safe and get the policies for Mr. Clark, which he did, and handed them to him.

A. W. Cockrell, a witness for plaintiff, testified that he was an attorney at law, and that in his opinion ten *per cent.* of the sum recovered is a proper fee to charge for the services rendered by the plaintiff.    That ten *per cent.* of the amount collected is a just and reasonable fee.    Witness does not mean ten *per cent.* of the amount in excess of ten thousand dollars, but ten *per cent.* of thirteen thousand dollars.

Edward F. Clark, testified on behalf of the defendants, that he was one of the defendants, and in the latter part

of June, 1887, the firm of Clark & Loftus lost their stock of furniture by fire; that said furniture was insured for fifteen thousand dollars, and the adjusters of the insurance companies, upon investigation, offered to settle for ten thousand dollars, but he refused to settle for that amount, and it became necessary to make up proofs of loss; that he went to Mr. Pope with the insurance policies, and said to him that the companies had offered to pay ten thousand dollars, but he would not accept that in settlement. He then told Mr. Pope that he wanted proofs of loss prepared to present to the insurance companies; that witness did not put the claims in Mr. Pope's hands for collection. The insurance companies had not positively refused to pay them, but had simply made the offer of ten thousand dollars; that witness did not ask Mr. Pope to do anything more than prepare the proofs and send them in to the insurance companies, and that he did not employ Pope as a lawyer, to collect the amount due, but simply as a clerk, to make out the proofs; that he asked Mr. Pope what he would charge, but he would not tell; he simply replied that they would not quarrel about the charges. Pope did not tell witness that the usual rate was ten *per cent.*, but that he would not charge witness that much. Witness asked repeatedly what would Mr. Pope's fee be, and he replied in the same manner, that he did not know, but they would not quarrel about fees. When witness refused to accept the offer of the insurance companies, the agents said that the proofs of loss would have to be made up, and after the proofs were forwarded the companies settled

at thirteen thousand dollars. Witness went to Mr.
Pope's office to get the policies, and saw them scat-
tered over the desk. Witness got the policies, and the
adjusters paid him thirteen thousand dollars. After
this Mr. Pope called on witness for fifty dollars, which
was paid him. About two weeks later he called again
and asked for one hundred dollars, and witness asked
him what he was going to charge defendants. Pope
said he was entitled to a commission of five per cent.,
for collecting the money, which would make six hun-
dred and fifty dollars, and witness said it was not fair;
that the claims had not been placed in Pope's hands
for collection, but only to make up the proofs of loss.

In rebuttal, plaintiff testified that it was untrue, as
testified to by Mr. Clark, that he did not put the poli-
cies in witness' hands for collection, but simply to
make proofs; that Clark put them with plaintiff, as a
lawyer, for collection. The proofs were made out by
plaintiff, as the initial steps in the collection, and not
at the request of Mr. Clark to make out proofs. He
did not ask plaintiff to make proofs, but placed the
claims in his hands for collection, and the proofs were
made out because, after the refusal of the companies
to pay, that was the first step to take. It is untrue,
as stated by Clark, that plaintiff did not tell him that
the usual rate was ten *per cent.*, but that plaintiff
would not charge him that much. Plaintiff did so tell
him. It is untrue, as stated by Clark, that when he
came to get the policies he found them scattered over
the desk. They were in plaintiff's safe, and plaintiff's
clerk took them out of the safe, at plaintiff's direction,

and handed them to Clark. Columbus B. Smith further testified that he heard Mr. Pope tell Mr. Clark that the usual rate was ten *per cent.*, but that he would not charge him that much; that when Mr. Clark came for the policies they were not scattered over the desk, but were in the safe, from which witness took them, by the direction of Mr. Pope, and handed them to Mr. Clark.

The above is a full statement of the evidence. There is a square issue between plaintiff and defendants as to whether or not the insurance claims were placed in the hands of the former, as an attorney at law, for collection. The settlement of this question belongs to the province of the jury, and under the well-settled rule on this subject, the appellate court will not disturb their verdict. Wilson vs. Dibble, 14 Fla., 47; Schultz vs. Pacific Insurance Co., *Ibid*, 73; Nickels and Gautier vs. Mooring, 16 Fla., 76; Coker vs. Merritt, *Ibid*, 416; Mayo vs. Hynote, *Ibid*, 673.

Counsel for plaintiffs in error concedes that the verdict cannot be set aside on this ground, but he contends that the verdict is excessive, and there is no evidence to sustain the finding of the jury to the extent they have gone. The process of reasoning by which he arrives at this conclusion is this, that the plaintiff, according to his own showing, has done nothing but prepare proofs of loss and submit same to the insurance companies, and in consequence of this work the said companies paid three thousand dollars more than they had previously offered. Hence it is contended

that the plaintiff cannot recover compensation for anything except the three thousand dollars.   It is unquestionably true that a verdict of a jury unwarranted by the evidence, and directly against it, will not be sustained.   Schultz vs. Pacific Insurance Co., 14 Fla., 73; Alvord, Kellogg & Campbell vs. Little, 16 Fla., 158; Wilson vs. Marks, 18 Fla., 322; Jacksonville, Tampa & Key West Ry. Co. vs. Roberts & Bemis, 22 Fla., 324; Miller vs. White, 23 Fla., 301.   The testimony, however, submitted to the jury must we look to in determining whether or not the verdict must be sustained.   In the record before us A. W. Cockrell testifies that he is an attorney at law, and that ten *per cent.*, not on the amount in excess of ten thousand dollars, but on thirteen thousand dollars, the amount collected, is a just and reasonable fee for the services rendered by the plaintiff.   Defendants introduced no evidence in opposition to this testimony as to what was a reasonable fee to allow the plaintiff.   The verdict is not for as much as the witness testified the plaintiff was entitled to, and hence it cannot be said that the verdict is unsupported by evidence.   It is conceded that the verdict cannot be disturbed as against the weight of the evidence.   Young vs. Whitney, 18 Fla., 54. This being the case, we are unable to disregard the evidence of the only witness as to the value of the services rendered.   The evidence shows that the plaintiff, Frank W. Pope, offered to take six hundred and fifty dollars for his services rendered the defendants, but this was not accepted, and he says he "offered then to take six hundred and fifty dollars, because he

wished to be very reasonable, having done some business for defendants before, and thinking of course it would be paid without any trouble." This offer did not bind either party, and in the absence of any agreement as to the amount to be paid for the services, it was incumbent upon the plaintiff to establish by evidence what was a reasonable fee for his services. The testimony of the witness is that plaintiff is entitled to ten *per cent.*, on thirteen thousand dollars, and defendants have not controverted this testimony.

On the record before us we see no ground for disturbing the judgment of the Circuit Court, and it is, therefore, affirmed.