H. F. DEXTER AND S. B. CONNER, PARTNERS TRADING AS DEXTER & CONNER, *Plaintiffs in Error,* V. SEABOARD AIR LINE RAILWAY, A CORPORATION, *Defendant in Error.*

It is settled law in this State that there can be no recovery upon a clause of action, even though it be a tort, that is in substance variant from that which is pleaded by the plaintiff; and so where the declaration in substance alleges that the defendant railway agreed to transport horses and mules and deliver them uninjured at Live Oak, Florida, and that by the careless management of the cars and train the horses and mules were bruised, injured, etc., and also where it clearly appears from the evidence that the horses and mules were shipped and tranported under a special contract at a reduced rate by the terms of which the defendant railway did not undertake the entire management of the car in which the animals were shipped, and did not undertake to transport them to Live Oak free from injury, and where the special contract shows that the plaintiff himself agreed to do many things essential to the safe transportation of the horses and mules, the plaintiff cannot recover on such a declaration.

This case was decided by Division B.

Writ of Error to the Circuit Court for Suwanee County.

The facts of the case are stated in the opinion of the court.

*C. A. Hardee* and *J. F. Harrell,* for plaintiffs in error;

*Geo. P. Raney,* for defendant in error.

HOCKER, J.—In October, 1905, the plaintiffs in error sued the defendant in error in the circuit court of Suwanee county. The declaration contained the two fol-

VOL. 55, JANUARY TERM, 1908.    293

Dexter & Conner v. Seaboard Air Line R. R.—Opinion of Court.

lowing counts, *viz*: "H. F. Dexter and S. B. Conner partners trading and doing business under the firm name and style of Dexter & Conner, by their attorneys, C. A. Hardee and J. F. Harrell sues the Sea Board Air Line Railway, a corporation organized and existing under and by virtue of the laws of a foreign state, and having an office and resident agent and doing business in Live Oak, Suwanee county, Florida, damages in the sum of $500.00. For that whereas, the defendant corporation during the month of November, A. D. 1904, and for a long time prior thereto was possessed of, owned and controlled, and was operating a certain railroad running and passing through said county, and passing through the city of Live Oak in said county, and through the city of Lake City in Columbia county, Florida, and was then and there a common carrier for hire and reward to it paid in this behalf, and the plaintiff on or about the 4th day November, A. D. 1904, caused to be delivered to defendant through the Georgia Southern Railway Co. at Lake City in the state of Florida a shipment of horses and mules, to be safely and securely transported and delivered uninjured to the plaintiff at Live Oak aforesaid, and defendant accepted said shipment of horses and mules so delivered by the plaintiff at the time and place aforesaid and then and there agreed to deliver same uninjured to plaintiff at said town of Live Oak. Plaintiff avers that all of said horses and mules delivered to defendant as aforesaid were all uninjured and in good condition when delivered to and accepted by defendant yet the defendant did not safely and securely carry the said horses and mules and deliver same to plaintiff uninjured as it had obligated and contracted to do; but on the contrary, by the careless use and negligent management of the train and cars of defendant used in transporting said horses and mules, by divers agents and employes of defendant then in charge of its train and cars aforesaid

used in the transportation of the stock aforesaid, 3 mules were thereby injured by being hurt and wounded in the head and eyes, to the extent that their sight was greatly impaired and was thereby damaged each in the sum of forty and no 1-100 dollars; also one other mule was thereby injured, cut, bruised, skinned and crippled and damaged in the sum of seventeen dollars; also one horse was likewise injured, cut, skinned and damaged in the sum of fifteen dollars; also one other mule was thereby injured, wounded, bruised and damaged in the sum of one hundred and fifty dollars; also one other horse was thereby cut, bruised, wounded and damaged internally, and damaged in the sum of twenty-five dollars.

2nd. That whereas on or about the 24th day of November, A D. 1904, the plaintiff likewise caused to be delivered, through the Georgia Southern Ry. Co. at Lake City, Florida, another shipment of stock consisting of horses and mules to defendant which said stock were then and there in good condition, and which said stock defendant accepted and agreed to safely and securely transport and deliver to plaintiff uninjured at the city of Live Oak in said county and state.

Yet defendant did not safely and securely transport and deliver uninjured to plaintiff in the city of Live Oak aforesaid as they had contracted and agreed to do; but on the contrary the defendant through the careless and negligent management of their train and cars then being operated and managed by divers agents and employes of defendant, and then and there running through said city of Live Oak in said county and state, one mule was then and there cut, wounded, bruised and broken and injured to the damage of plaintiff in the sum of one hundred and sixty dollars; all of which said horses and mules damaged and injured aforesaid were part of the stock delivered to said defendant by plaintiff as aforesaid, and were being transported by said defendant for hire or reward aforesaid.

Dexter & Conner v. Seaboard Air Line R. R.—Opinion of Court.

Plaintiff further avers that the original bill of lading or shipping contract under which said defendant undertook and agreed to transport above shipment of stock were returned to defendant together with plaintiff's claim of damage for the injuries to the stock as above set forth just shortly after the said stock were delivered to plaintiff at said city of Live Oak, which said stock were delivered to plaintiff by defendant in the injured and damaged condition as above mentioned on the 5th and 26th days respectively of November, A. D. 1904, which said bills of lading or shipping contract, together with plaintiff's claim aforesaid is still in the possession of defendant, and defendant has hitherto refused and neglected to pay plaintiff the said amounts claimed, or any part thereof, wherefore plaintiff brings this suit and claims $500.00 as their damage."

The defendant filed the plea of not guilty, and the following additional plea: "And for a second plea the defendant says that the animals or live stock alleged to have been injured were shipped under a contract with a connecting line, to-wit: The Central of Georgia Railway Company, the original contract marked exhibit 'A' is hereto annexed as a part of this plea, the same as if fully set out herein, and that such contract inured under its terms to the benefit of this defendant, and by the terms thereof the plaintiffs, in consideration of the reduced rate of freight, to-wit: $69.75 and an agreement to furnish free passage to the owner of said animals or his agent on the train with such animals or live stock, assumed and released the said Central of Georgia Railway Company and all its railway connections, including the defendant, from all risk or injury which the animals or any of them might sustain or receive in consequence of their own viciousness, or otherwise, except from some cause or causes affirmatively appearing to have been caused by the negligence of said Central of

Georgia Railway Company or some connecting line while in the possession of said Central of Georgia Railway Company or said connecting line, it being however expressly provided in and by said contract that neither the Central of Georgia Railway Company nor any connecting line should be responsible or liable for any act, omission or negligence of any carrier other than itself over whose line or lines said property might be transported.

And defendant avers that said animals were not nor was any of them or either of them injured through the negligence of the defendant while in its possession; and further says that the defendant received and transported said animals under the contract of shipment above stated and not under any other contract of shipment. All of which defendant is ready to verify.

And for a third plea defendant says that under section three of the contract of shipment referred to and set out in the foregoing plea which section is made a part hereof as if fully set out herein and defendant avers that the plaintiffs undertook the care of such stock and to see that such stock were securely placed in the car and the car was securely and properly fastened and thus relieved defendant of liability therefor; all of which defendant is ready to verify."

The case was tried at the spring term, 1906, and upon submission of the evidence of the parties the trial judge directed the jury to find a verdict for the defendant, which verdict was rendered by the jury, and thereupon a judgment was entered for the defendant. From this judgment the plaintiff sued out a writ of error.

Upon the trial after the plaintiff had introduced his testimony which tended to show that on the 2nd of November, 1904, he delivered to the Central of Georgia Railway Company a shipment of eight mules, fourteen horses and two calves to be shipped to Lake City and

from Lake City to Live Oak by the defendant company. On the 23rd of November, 1904, there was another shipment by the same lines of twenty-four mules and four horses. Several of these horses and mules were injured and more or less seriously damaged when they arrived at Live Oak, and the evidence tended to show that the injury occurred on the defendant's line between Lake City and Live Oak.

The defendant proved that both of said shipments of stock were made under special contracts. Among others they contained the following provisions:

### "Conditions of Contract.

Whereas, the Central of Georgia Railway Company and connecting lines transport live stock only at carrier's risk rates, except when in consideration of a reduced rate, the owner or shipper assumes certain risks specified below.

1. Now, in consideration of said railway and connecting lines agreeing to transport the above described live stock at the reduced rate of 69.75 and a free passage to the owner or his agent on the train with his stock (if shipped in carload quantities), the said owner or shipper does hereby assume (and release the said carrier from) all injury, loss and damage, or depreciation which the animals or either of them may suffer in consequence of either of them being weak, or escaping or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, or of being injured by fire, or the burning of any material and also from all damage or injury, or loss which may be sustained by reason of any delay or detention in such transportation, whether occasioned by any mob, strike or threatened violence to persons or property from any source or from any injury to track or yards and from any and all other causes, whether mentioned herein or not,

while in the possession of the said company, the connecting lines, or either of them, which shall not affirmatively appear to have been caused by the negligence of said railway company or its connecting lines.

2. The owner or shipper agrees that he will load and unload said stock at his own risk and feed, water and attend the same at his own expense and risk while it is in the railroad's stock yards awaiting shipment, and while on the cars, or at feeding and transfer points, or where it may be unloaded for any purpose, and in case the transportation companies shall furnish laborers to assist in loading and unloading said animals, they shall be subject to the orders and deemed employes of the said owner while so assisting.

3. It is further understood that the owner or shipper has examined and found in good condition the car or cars provided for the transportation of said live stock, and hereby accepts the same, and agrees that they are, as thus provided, suitable and sufficient for said purpose, and that the owner or shipper will, at his own expense, provide such bedding or other suitable appliances in said car or cars as will enable said live stock to stand securely on their feet while in the same; and that the said owner or shipper will see that the live stock are securely placed in the cars furnished, and that the cars are securely and properly fastened, so as to prevent the escape of said live stock therefrom.

4. And it is further agreed that in case of accidents to or delays of trains from any cause whatever, the owner or shipper is to feed, water and take proper care of stock at his own expense.

5. And it is further agreed that while the company's employes shall provide the owner or person in charge of the stock all proper facilities on trains and at stations for taking care of the same, the business of the company shall not be delayed by the detention of trains

to unload and reload stock, or for any cause whatever, but cars may be left at station on request of person in charge of the same, to be forwarded by a freight train as soon as practicable, if he so desires."

It is settled law in this state that there can be no recovery upon a cause of action, even though it be a tort, however meritorious it may be or however satisfactorily proved, that is in substance variant from that which is pleaded by the plaintiff. Walker v. Parry, 51 Fla. 344, 40 South. Rep. 69; Louisville & N. R. Co. v. Guyton, 47 Fla. 189, 36 South. Rep. 84; Wilkinson v. Pensacola & A. R. Co. 35 Fla. 83, 17 South. Rep. 71; Jacksonville, T. & K. W. Ry. Co. v. Neff, 28 Fla. 373, 9 South. Rep. 653; Parrish v. Pensacola & A. R. Co. 28 Fla. 251, 9 South. Rep. 696.

The gist of the declaration is that the defendant agreed to transport the horses and mules and deliver them uinjured at Live Oak, and that by the careless management of the cars and train, the horses and mules were bruised, injured, etc. It is evident from the terms of the special contract that the defendant did not undertake the entire management of the car in which the animals were shipped, nor to transport them to Live Oak free from injury; for if the animals were injured by the neglect of the plaintiff in failing to do those things which he agreed to do, then, the defendant was not to be liable. In other words the duty which was actually imposed on the defendant by the contract is a different duty from that which is alleged in the declaration. The case of Shaw v. The York & North Midland Ry. Co. 13 G. B. 347, text 353, S. C. 78 Rev. Rep. 395, was an action on the case for damages for the negligent killing of a horse. Three horses were shipped on the railway from York to Watford, and the declaration alleged that one horse was killed by the negligent carrying of said horse in a defective carriage. There was a memorandum at-

tached to the ticket which was issued for the transportation of the horses in these words: "This ticket is issued subject to the owners undertaking all risks of conveyance whatsoever, as the company will not be responsible for any injury or damage (however occurring) to horses or carriages, while traveling or in loading or unloading." The appellate court said: "It appears to us to be clear that the terms contained on the ticket given to the plaintiff at the time the horses were received, formed part of the contract for the carriage of the horses between the plaintiff and the defendants, and that the allegation in the declaration that the defendants received the horses *to be safely securely carried* (italics ours), which would throw the risks of conveyance upon the defendants, is disproved by the memorandum at the foot of the ticket; and the alleged duty of the defendants safely and securely to carry and convey the horses would not arise upon such a contract. It may be, that notwithstanding the terms of the contract, the plaintiff might have alleged that it was the duty of the defendants to have furnished proper and sufficient carriages, and that the loss happened from a breach of that duty; but the plaintiff has not so declared, but has alleged a duty which does not arise upon the contract as it appeared in evidence." 3 Hutchinson on Carriers (3rd ed.) sec. 1339. In the case of Lake Erie & W. R. Co. v. Holland, 162 Ind. 406, 69 N. W. Rep. 138, 32 Am. & Eng. R. R. Cases (N. S.) 138, it is held: "applying the rule that a plaintiff must recover in accordance with the allegations of his complaint a suit against a common carrier for breach of its common law duty in the transportation of live stock must fail upon proof that the shipment was made under special contract."

No attack was made in the court below upon the special contract put in evidence, nor any one of its provisions. Nor was there any effort made to dispute or

avoid it or them, or to show compliance with them by the plaintiff. In this connection we refer to the case of Atlantic Coast Line R. Co. v. Dexter & Conner, 50 Fla. 180, 39 South. Rep. 634, and for a general discussion of the question of the transportation of live stock etc. by common carriers to Richardson v. Chicago, & N. W. Ry. Co., 61 Wis. 596, 21 N. W. Rep. 49.

It is unnecessary to review the testimony, but it may not be improper to observe that while it shows several of the horses and mules were injured, it does not appear what was the cause of the injury, and it may well have happened from the negligence of the plaintiffs in taking care of the horses and mules, which the contract provided they should do. No negligent management of the trains and cars is shown, or that the injury was caused "by the running of the locomotives or cars of the defendant company." Atlantic Coast Line R. C. v. Dexter & Conner, *supra*.

The judgment of the court below is affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL, and WHITFIELD, JJ., concur in the opinion.