Florida Fire & Casualty Insurance Company, Plaintiff in Error, v. Gerald E. Hart, Defendant in Error.

Opinion Filed May 4, 1917.

1. A new trial will not be ordered if it appears that the verdict was founded upon a consideration of conflicting evidence as to the material facts.

2. Where the evidence does not tend to prove the material facts necessary to support the verdict under the pleadings or the

verdict was found upon a misapplication of the facts a new trial should be granted.

3. An allegation in a declaration that the plaintiff was elected by the Board of Directors of the defendant corporation as secretary for the company at a salary of two hundred dollars per month and then and there employed the plaintiff in such capacity until the next annual meeting of the company at the salary stated, is not supported by a resolution adopted by the Board of Directors the same day providing that: "The secretary of said company be granted the salary of two hundred dollars a month; that he is to take position as general manager of both fire and casualty departments."

4. There can be no recovery by the plaintiff in an action at law unless the evidence supports the case as made by the declaration. However meritorious a cause may be as shown by the evidence, if it is variant in substance from that pleaded by the plaintiff, there can be no recovery.

Writ of Error to Circuit Court for Duval County, Daniel A. Simmons, Judge.

Judgment reversed.

*Cockrell & Cockrell,* for Plaintiff in Error;

*Frank L. Dancy,* for Defendant in Error.

ELLIS, J.—Gerald E. Hart sued the Florida Fire and Casualty Insurance Company, hereinafter referred to as the defendant, in the Circuit Court for Duval County upon a contract for personal services. The declaration alleged that the Board of Directors of the defendant corporation on or about April 8th, 1914, elected the plaintiff, Hart, as Secretary for the company at a salary of two hundred dollars per month, and then and there the defendant employed the plaintiff in such capacity until the

next annual meeting of the company at the salary stated; that the plaintiff under that contract began work for the defendant and continued in its service from April 8th, 1914, to September 1st, 1914, when he was wrongfully and without cause discharged by the defendant. The plaintiff demanded the payment of the salary for the remainder of the term for which he was employed from September 1st, 1914, to February, 1915, inclusive. The suit was begun in September, 1914.

The defendant interposed four pleas, which in substance were as follows: First that it never was indebted; second, payment; third, never promised as alleged, and, fourth, a special traverse of the allegation that the plaintiff began work and worked for the defendant from April 8th to September 1st, 1914, on which day defendant wrongfully and without cause discharged the plaintiff. Issue was joined upon these pleas and the cause submitted to a jury, who returned a verdict for the plaintiff in the sum of one thousand and eighty dollars. Judgment was entered for the plaintiff, to which the defendant took writ of error.

There are three assignments of error, the last of which is: The court erred in denying the motion of the defendant to set aside the verdict and grant a new trial. This assignment is discussed first in the briefs, and we will pursue the same order in disposing of the questions presented.

The motion for a new trial contains twelve grounds. Under the assignment based upon the overruling of this motion it is contended that the evidence does not support the verdict; that the evidence preponderates in favor of the defendant to such an extent as that it is apparent the jury were influenced by matter other than the evidence in returning the verdict for the plaintiff. The plea that the

defendant never promised as alleged operated as a denial of the contract or agreement of employment, and the last plea denied the allegation that the defendant wrongfully and without cause discharged the plaintiff.   The plea of never was indebted was inapplicable and the plea of payment has no support in the evidence.   Therefore the questions presented upon this assignment are:   Whether the plaintiff and the defendant entered into an agreement on or about April 8th, 1914, whereby the defendant employed the plaintiff as its secretary from April 8th, 1914, until the next annual meeting of the defendant company at a salary of two hundred dollars per month, and, second, whether before the expiration of such period of employment the defendant wrongfully and without cause discharged the plaintiff?

In the case of Carney v. Stringfellow, decided at the present term, this court speaking through Mr. Justice WHITFIELD, said: " A stronger showing is required to reverse an order allowing a new trial than to reverse one denying it," and quoting from the case of Schultz v. Pacific Insurance Co., 14 Fla. 73, said: "A very clear and strong case must be made out before this court would feel justified in reversing his (the trial judge's) action.   It should be a very plain case to justify in appellate court in setting aside this concurrent conclusion of both court and jury, upon the ground that their action was contrary to the evidence or weight of evidence."   In the Schultz case, *supra*, the court said: "It is within the province and power of the court to set aside a verdict which does not reach a substantially just conclusion in cases where the conflicts are of such character, and the circumstances of such nature, as to give just ground for the belief that the jury acted through prejudice, passion, mistake or any other cause which should not properly control them.   This

power exists in the court." See also Alvord, Kellogg & Campbell v. Little, 16. Fla. 158; Wilson v. Marks, 18 Fla. 322; Clark v. Pope, 29 Fla. 238, 10 South. Rep. 586; Browning v. State, 41 Fla. 271, 26 South. Rep. 639; Tampa Water Works Co. v. Mugge, 60 Fla. 263, 53 South. Rep. 943; Florida East Coast Ry. Co. v. Geiger, 66 Fla. 582, 64 South. Rep. 238.

In the case of Wilson v. Jernigan, 57 Fla. 277, 49 South. Rep. 44, this court discussed the principle which should control a trial judge in passing upon a motion for a new trial based upon the ground that the evidence "is insufficient to support the verdict." The question, said the court, is not what the judge may think the jury ought to have done, nor what the judge may think he would have done as a juror, but whether as reasonable men they could have found such a verdict. In passing upon a motion for a new trial involving the sufficiency of the evidence to support the verdict the same question is presented to the appellate court as is presented to the trial court; but when the question reaches the appellate court and an assignment of error is based on an order overruling the motion for a new trial, there is necessarily added to the presumption of the verdict's reasonableness the weight of the judge's opinion. The opinion which is seemingly entertained by counsel for plaintiff in error that the verdict of a jury should not be permitted by this court to stand if there is a preponderance of evidence against it has no foundation in any decision of this court. The case of Tampa Water Works Co. v. Mugge, *supra,* when read in connection with the facts shows that the evidence "overwhelmingly" preponderates against the verdict. It was a case in which "a substantially just conclusion" was not reached by the jury, as was said by Mr. Justice WESTCOTT in Schultz v. Pacific Insurance Co., *supra.*

The finding was unreasonable, being so contrary to the manifest weight of the evidence that the court might consider that the jury had not really performed the judicial duty cast upon them, as was said by Lord HALSBURY in Metropolitan Ry. Co. v. Wright, L. R. 11 App. Cas. 152, and quoted approvingly in Wilson v. Jernigan, *supra.*

This court said in McMurray v. Basnett, 18 Fla., 609, that the verdict should not be set aside although the evidence seems to preponderate against the finding of the jury, where the jury has to decide upon the credibility of witnesses, "unless there is ground for the belief that the jury acted through prejudice, passion, mistake, or any other cause which should not properly control them." See also Tallahassee Railroad Co. v. Macon, 8 Fla. 299; Ammons v. State, 9 Fla. 530; Pensacola and Georgia Railroad Co. v. Nash, 12 Fla. 497; Simms v. Hodges, 34 Fla. 498, 16 South. Rep. 317. In the Mugge case the trial court expressed in his order that he was of the "opinion that the testimony preponderated in favor of the defendant," but denied the order. This court said: If the trial judge was of the opinion that the preponderance of the evidence was manifestly in favor of the defendant, it was the court's duty to have granted the new trial. It was because the trial court refused to exercise his judicial discretion that this court held the ruling to be erroneous. A motion for a new trial is a remedy accorded to a party litigant for the correction of any injustice that might have been done by the verdict of a jury. He has the right to invoke the discretion of the trial judge as to whether the injustice of the verdict is such that he ought to have an opportunity to take the case before another jury. In exercising this discretion the judge determines whether the verdict was against the great weight of the evidence. If he refuses to exercise this discretion he de-

prives the party who invoked it of a substantial right.
This is the principle held by many of the authorities cited
in the Mugge case.    See Felton v. Spiro, 78 Fed. Rep.
576; Vaulx v. Tennessee Cent. R. Co., 120 Tenn. 316,
108 S. W. Rep. 1142; Kansas Pacific Railway Co. v.
Kunkel, 17 Kan. 145.    In the latter case the opinion was
rendered by Mr. Justice Brewer in which he said: "The
case comes clearly within the rule so often declared by
this court, that where there is clear and positive testimony
sustaining every essential fact, and the verdict has re-
ceived the approval of the trial court, this court will not
interfere, even though the testimony seems to greatly
preponderate the other way."    In that opinion he re-
viewed the decisions of many courts pointing out that the
rule he announced was generally applied.    Counsel con-
tend that *nisi prius* judges hesitate to set aside a verdict
because of the implied reflection upon the jury's intelli-
gence or integrity, assuming that in setting aside a ver-
dict the trial court implies that the jury were improperly
influenced by considerations outside the evidence.    We
do not know how this may be in fact.    The writer's
experience as a practitioner did not lead him to such a
view.    In passing upon a motion for a new trial involving
the sufficiency of the evidence to support the verdict the
trial court does not substitute his judgment for that of the
jury whose province it is to settle questions of fact, but
whether the verdict is conformable to reason.    That is to
say, could a reasonable person, upon the evidence sub-
mitted, entertain the jury's opinion?    Judge Brewer
said, and such has been the holding of this court, if the
trial judge thinks that from mistake or prejudice, or
other cause, the jury have found against the fair prepon-
derance of the evidence, it is his duty to set the verdict
aside and grant a new trial.    The mistake, however, may

not proceed from any improper or wilfully wrong conduct. It may be the result of mistake, not conformable to reason, the verdict may be absurd or whimsical. See the discussion in Wilson v. Jernigan, *supra.* When this court comes to consider the case upon the record and it appears that the trial judge has exercised his discretion and approved the verdict, it must be taken, as Judge BREWER said, as the judge's certificate that the verdict is either fully in accord with his belief upon the testimony, or else that there was such a fair and reasonable doubt as to the weight of the evidence *pro* and *con* that honest and intelligent minds might fairly differ in their conclusions, and that therefore the verdict of the jury should be accepted as just. "We have, therefore, not the witnesses but the finding of the jury *prima facie* right, and also the approval of the only judge who has anything like full opportunities of knowing whether it was right. Under these circumstances it should be a very clear case before a reviewing court should interfere." Applying the rule to this case, if the verdict was founded upon a consideration of conflicting testimony as to the material facts, we cannot disturb it, even though we might have as jurors come to a different conclusion. If it was found upon testimony which does not tend to prove a material fact necessary to entitle the plaintiff to recover and upon an entire misapplication of the facts, a new trial should be ordered. See Pensacola and Georgia Railroad Co. v. Nash, *supra.*

The theory upon which the declaration is framed is that as the Board of Directors of the defendant corporation elected the plaintiff in April, 1914, as secretary of the corporation, it thereby employed the plaintiff to work for it in that capacity until the next annual meeting of the company, at a salary of two hundred dollars per month. The plea of the defendant that it never promised as al-

leged put this proposition in issue. The burden was upon the plaintiff to show by a preponderance of the evidence that it was true. The charter and by-laws of the defendant corporation that were introduced in evidence do not show that any salary whatever was attached to the office of secretary. Section 5 of the charter of the corporation provides: "The officers, other than the members of the managing boards, shall be elected by the directors at the first meeting next after the first election, or as soon thereafter as may be, and succeeding elections of such officers shall be as prescribed from time to time in the by-laws." Article V, Section 1, of the by-laws is as follows: "Section 1. Choice. Term of Office. The President, Three Vice-Presidents, Secretary and Treasurer shall be chosen annually at the first meeting of the directors, or failing then, at a subsequent meeting. Such officers to hold until the next annual meeting, and until their successors respectively are elected and qualified, or until they are respectively removed by the managing board." At the time the plaintiff was elected secretary, according to his testimony, there was no managing board; it has been abandoned. The reason for the discontinuance of this board is shown by the minutes of the Board of Directors of April 7th and 8th, 1914, as introduced by the plaintiff. These minutes show that the question was raised as to the legality of such a board, it had powers "over and above the powers of the Board of Directors and that such managing board should be discontinued;" whereupon the three men constituting that board resigned and their resignations were accepted. The minutes then show the election of the plaintiff as secretary, and the adoption of a resolution by the directors that the "secretary of said company be granted the salary of two hundred dollars a month; that he is to take position as gen-

eral manager of both fire and casualty departments."
The plaintiff continued to exercise the duties of the posi-
tion as secretary of the company until August 18th,
1914, when on account of some difficulties the corpora-
tion seemed to be in, a new Board of Directors was
elected upon the request of the "State Board of Insurance
Commissioners." On August 19th Mr. E. A. Groover
took possession of the records of the secretary, according
to the plaintiff's testimony. The offices were removed to
another building and the plaintiff was paid his salary to
August 31st, 1914. On September 1st the plaintiff re-
ceived a letter from E. A. Groover as Vice President,
advising the plaintiff that the office of "Secretary and
Manager of the Florida Fire and Casualty Company" had
been declared vacant and that the services of the plaintiff
were no longer desired. In that letter the plaintiff was
requested to "deliver up all the records and property be-
longing to the company." There was some correspond-
ence between the plaintiff and the company's officers re-
lating to the plaintiff's duties as secretary and his salary
after this suit was instituted which is unimportant and
unnecessary to be mentioned particularly. Section Five of
Article Five of the by-laws defines the duties of the secre-
tary. That officer was subject to the control and direction
of the Managing Board; he had the custody of all books
and papers of the company except such as the Treasurer
was required to keep, he was to keep the minutes of the
stockholders' meetings, and those of the directors and
managing board, to keep the stock certificate books, trans-
fer book, stock inventory book, the seal of the company,
and to sign with the President all certificates of stock and
affix the seal to such certificates, to give notice of all
meetings of the stockholders, directors and managing
board, and attend generally to the records of the company
and perform such duties as may be prescribed by the

managing board or the board of directors.   On July 17, 1914, the plaintiff as secretary caused to be published a notice of a special meeting of the company to be held on August 18th, for the purpose of electing a Board of Directors, considering the then condition of the company's affairs, voting upon the proposition to reduce the capital stock of the company, and to take such steps as may be necessary to meet the demands of the Board of Insurance Commissioners of the State of Florida, and for the transaction of any other business which may properly come before the meeting.

At the time the plaintiff was elected secretary he was working for the company as "Chief Clerk in the Casualty Department," and after that the Managing Board took no further part in the affairs of the company.   It is apparent from this evidence that the resolution of the Board of Directors of April 7th and 8th providing for the payment to the secretary of a salary of two hundred dollars per month was to provide compensation for his services not only as secretary, but as general manager of both "fire and casualty departments."   The managing board which seemed up to that time to have the general management and direction of the company's affairs was discontinued, and the plaintiff's duties according to his own testimony under that employment were to "keep all records of the company, attend to the business of the company in every form and shape, attend the board meetings and take their minutes and enter them up in the minute book, all applications for risks of every kind, fire, employers' liability, accident and health and plate glass and so on, and I had to pass and approve, in addition to which I had all the duties to perform in the ordinary way of the manager of a company."   That portion of the duties imposed by this employment which theretofore the secretary had performed without compensation, constituted relatively a

small part of the duties under the new employment. The duties of secretary were prescribed by the by-laws for the performance of which no compensation was provided by by-law. The compensation for the new employment was fixed by the Board of Directors, and that resolution made no provision for an employment for any definite time beyond the month. Nor does the plaintiff say in his testimony that the employment was for any definite length of time. Upon cross-examination the plaintiff said: "The nature of the work that I was to do when I undertook to do this work for the company for which I was given this two hundred dollar salary, was the entire management of the company, all the branches of the business, the under-writing business—both casualty and fire." Before his employment he went before the Board of Directors and told them what his qualifications were for doing that kind of work, and he said "they went pretty thoroughly into my qualifications for that kind of work." It does not appear from the plaintiff's testimony, however, that the employment was for any definite time, except during a meeting of the directors in August, 1914, when protesting against his removal he said: "I am secretary of this company, elected from February to February, and I intend to hold the position." On being called in rebuttal he said that when he was elected secretary no information was given him that the position was a temporary one. The material allegation of the declaration that the plaintiff was elected as secretary of the company until the next annual meeting of the company, at a salary of two hundred dollars per month, has no support whatever in the evidence, either in the testimony of the witnesses, the minutes of the board of directors or the charter and by-laws of the company. The conclusion is irresistible, therefore, that the jury

through a misapprehension of the issue, mistakenly considered the resolution of the Board of Directors of August 8th, 1914, to be a proposition of employment of the plaintiff in the capacity of secretary until the next annual meeting at a salary of two hundred dollars per month. Whereas the issue under the pleadings was, whether the plaintiff's election as secretary carried with it under the by-laws an employment in that capacity for that length of time at such salary per month.    If the declaration had been framed upon the resolution as a contract of employment of the secretary as secretary and general manager of both fire and casualty departments of the company at a salary of two hundred dollars per month until the next annual meeting of the company, the resolution supplemented by testimony as to the duration of employment as claimed by the plaintiff, would have tended strongly to support the plaintiff's cause; but as the issue was presented to the jury, the resolution was valueless as it merely established an agreement to pay the secretary as secretary and general manager of both the fire and casualty departments of the company a salary of two hundred dollars per month for an indefinite time.    It is unnecessary to discuss the evidence as to the purpose of the resolution and the time for which the secretary was to be paid the salary for discharging the duties of secretary and general manager of both fire and casualty departments.    We have examined the testimony and find that the defendant's witnesses were uncontradicted as to the fact that the employment was a temporary one only.    The trial court's denial of the motion for a new trial therefore was erroneous, in that the verdict was unsupported by the evidence, and showed it to have been rendered under a misapprehension of the facts.    The rule has long since been established in this State that the evidence must sup-

port the case made by the declaration, and however meritorious a cause may be shown by the evidence, if it is variant in substance from that pleaded by the plaintiff there can be no recovery. See Coons v. Pritchard, 69 Fla. 362, 68 South. Rep. 225; Dexter v. Seaboard Air Line Ry., 55 Fla. 292, 45 South. Rep. 887; Lofton v. Jacksonville Electric Co., 61 Fla. 293, 54 South. Rep. 959.

The judgment of the Circuit Court is therefore reversed.

Browne, C. J., and Taylor, Shackleford and Whitfield, J. J., concur.