SOUTH ATLANTIC TELEPHONE AND TELEGRAPH COMPANY, *Plaintiff in Error*, v. HENRY R. SHAW, *Defendant in Error*.

Opinion Filed March 31, 1922.

Petition for Rehearing Denied April 25th, 1922.

1. In an action to recover damages for personal injuries the plaintiff can recover only upon the case made by his declaration.

2.  In an action for damages for personal injuries resulting
    from burns caused by an alleged defective blowtorch fur-
    nished by the defendant corporation to one of its employees,
    the allegation that the instrument was defective and un-
    safe in that it had a latent tendency to allow ignited gaso-
    line to escape, is not proved by showing that while the in-
    strument was being used and operated by the plaintiff the
    threaded end of the needle valve was broken from the con-
    duit through which the heated or vaporized gas passed into
    the tube.

Writ of Error to the Circuit Court for Dade County,
H. Pierre Branning, Judge.

Reversed.

*Shutts & Bowen* and *E. B. Kurtz* for Plaintiff in Error;

*Carson & Botts* and *Thomas B. Everhart* for Defendant
in Error.

ELLIS, J.—The defendant in error, Henry R. Shaw, a
man about thirty-two years of age was employed by the
plaintiff in error, the South Atlantic Telephone and Tele-
graph Company, as cable splicer. His rate of wages was
six dollars and fifty cents for a day of eight hours, he did
some "overtime" work which ran his weekly wages to an
average of about sixty-five dollars.

On September 29th, 1919 he was at work in a "manhole"
at the corner of Avenue D and Morris Street in the city
of Miami. He had been supplied by the company with a
blowtorch commonly used in melting solder and metal. Mr.
Shaw was making a change in the cable, opening an old
splice in an old cable and the blow torch was being used
in melting solder on the cable. The cable was a large one

incased in a lead pipe. He was endeavoring to remove the lead pipe, and had melted the joint at one end and was engaged in melting the other end, to do so it became necessary to turn the torch on its side to work underneath the cable. As he did this ''something broke about the torch,' a flame shot back into his face, he threw himself upon the floor of the manhole to protect himself from the flames but was severely burned. The plaintiff was supplied by the Company with a helper who came to plaintiff's relief by throwing a tarpaulin over the manhole and smothering the fire.

The torch consists of a metallic reservior about five and one half inches high and about fourteen inches in circumference. This reservior is designed to contain the fuel which supplies the flame. The fuel which the makers of the instrument intended should be used is kerosene, but the fuel actually used was gasoline. Upon the side of the reservior is a handle by which the instrument is to be held by the person who operates it. Upon the top of the reservior is a small opening through which the reservior is filled with fuel, this opening is closed by a metallic cap, there is also an air pump and the burner, the latter made exclusively of metal except the handle of the needle valve which controls the supply of fuel to the flame. The burner consists of a metal tube about three inches long and about an inch and a quarter in diameter to the rear end of which is attached the needle valve. The burner is attached to the reservior by a small pipe through which the fuel is forced by air pressure into a conduit upon one side of the metal tube running from the rear to the forward end and back again through the needle valve into the metal tube which is heated by means of a small pan underneath into which is poured some of the fuel which is ignited just be-

fore operating the torch. One arm of the valve is let into the conduit by means of a threaded end, the other arm is attached to a small iron bar by means of a screw, the other end of the bar is attached to the metallic tube thus making the valve rigid. This valve is operated by a long shanked screw at one end of which is a wooden handle.

The declaration contains four counts. It rests upon the doctrine that it is the duty of the master to furnish the servant with safe tools with which to work and that defend ant in this case failed to do so. The first count alleged that the blowtorch which was furnished by the defendant to the plaintiff with which to work was unsafe in that it had a latent tendency to allow ignited gasoline to escape. The second count alleged that the defendant furnished gasoline as a fuel for the torch which was unsafe, instead of kerosene which was the kind of fuel the instrument was intended to consume. The third count alleged that the blowtorch had a latent tendency to allow ignited gasoline to escape which the defendant knew or could have known by the exercise of reasonable diligence, but that the plaintiff did not know and by the exercise of reasonable diligence could not have known, and the defendant failed to warn. him; the fourth count alleged that the use of gasoline as fuel in the blow-torch was a latent and concealed danger in that the blow-torch was. designed and made for the use of kerosene and and not gasoline, all of which the defendant knew or could have known by reasonable diligence but that the plaintiff did not know and could not have known by the exercise of care and diligence.

There were six pleas. First not guilty; second, that the plaintiff's negligent care and maintenance of the blow-torch prior to the accident was the proximate cause of his injury; Third, that his negligent care and maintenance of

the blowtorch at the time of the accident was the proximate cause of the injury; Fourth, that the plaintiff negligently used and operated the blowtorch which caused the injury; Fifth, that plea was a composite plea consisting in substance of the averments of both the second and third, and the sixth was a plea of satisfaction and discharge.

Issue was joined upon the pleas and the parties went to trial. There was a verdict for the plaintiff in the sum of twenty-five thousand dollars upon which judgment was entered and the defendant took writ of error.

The assignments of error, thirty-six in number, all rest upon rulings which occured at the trial and involve the admission and rejection of evidence the giving and refusing of instructions to the jury and the sufficiency of the evidence to support the verdict.

The negligence of the defendant consisted according to the declaration in one of the several alleged omissions of duty as the proximate cause of the plaintiff's injury. These omissions of duty related to the blowtorch which was used by the plaintiff, and are as follows: The blowtorch was unsafe in that it had a latent tendecy to allow ignited gasoline to escape; second, gasoline, instead of kerosene, was furnished as a fuel; third, the defendant knew or could have known of the alleged latent defect and that the plaintiff did not know it and the defendant failed to warn him, and fourth, that the use of gasoline as a fuel in the torch was a latent and concealed danger which the defendant knew or could have known and which the plaintiff did not know and the defendant failed to warn him.

A plaintiff must recover, if at all, upon the case made by his declaration and not upon some other case made by evidence. However meritorious a case may be as shown

by the evidence there can be no recovery unless the declaration makes out that kind of a case. See Coons v. Pritchard, 69 Fla. 362, 68 South. Rep. 225; Dexter v. Seaboard Air Line Ry., 55 Fla. 292, 45 South. Rep. 887; Florida Fire & Casualty Ins. Co. v. Hart, 73 Fla. 970, 75 South. Rep. 528.

There is nothing in the evidence to warrant the finding that the injury occurred to the plaintiff because of a structural defect in the blowtorch which caused a latent tendency to allow ignited gasoline to escape, nor that the use of gasoline instead of kerosene as a fuel caused the injury. The testimony of the plaintiff was: "I had completed the melting of one joint on one end and was engaged in melting the other end and as I was working on the side joint it was necessary to turn the torch on its side to work underneath the cable. As I did so something broke about the torch and there was an immense flame came up in my face and naturally I let go the torch and dropped it and crawled down on the floor in the corner of the manhole to escape the fire" etc.

The plaintiff's testimony on this point was not, nor indeed could it be, reasonably disputed because he was the only witness to the incident. He was alone in the manhole, the helper was on the surface and put the tarpaulin over the manhole which smothered the flames.

What occurred was, while the plaintiff was using the blowtorch, something about it broke which allowed the heated gasoline in a state of volatilization to escape and igniting as it escaped produced the flame. An examination of the exhibit shows what was broken. It was the part described herein as the threaded end of the needle valve where it entered the conduit or chamber in which the gaso-

line was heated before passing through the valve into the tube. The cause of the breaking may have been due to defective material, or the loss of a screw which held one end of the valve frame to the iron bar or the striking of the instrument against some obstruction in careless handling. In either the first or second case the defendant's liability under the circumstancts would be very doubtful while in the case last named there would be no liability. But neither the first nor second hypothesis is the one on which the declaration was framed. There was no evidence that the instrument was so unscientifically or carelessly constructed that it developed a tendency, latent or otherwise, to allow ignited gasoline to escape, nor was there any evidence that the use of gasoline as a fuel caused the accident. There is evidence to show that the plaintiff had used the blowtorch for about six weeks. At another time during his testimony he said it was a new torch and had never been used, that it was taken out of the storeroom and given to him that day, and at another time he said that he had used gasoline with "that particular torch on five or six prior occassions" and that "it was a comparatively new torch", that he and his helper, Lane, had used it "for a period of about six weeks. That it was possibly six weeks. I don't know whether it was that long or not"

The blowtorch was in his custody, it was kept in a tool kit or box by his helper and taken with them when they went out upon a job.

The plaintiff, himself, had always used gasoline as fuel, himself made requisition upon the company for that kind of fuel when it was needed to supply the reservoir.

There was no evidence tending to show that there was any structural defect in the appliance rendering it unsafe,

on the other hand the use of this particular instrument on five or six prior occasions tended to show that it was without fault as to mode of construction and was sufficient for the purposes for which it was designed. Besides it was in the custody of the plaintiff and had been for several weeks than whom no one perhaps was better qualified to inspect the instrument and judge of its efficiency. If the breaking of the needle valve from the conduit or heating chamber was due to defective material of which the valve was made, there was no evidence to show that fact nor to show that the defendant could have known of that particular defect in that instrument.

In this view of this case it is unnecessary to discuss any other assignments of error. It follows from what has been said that the judgment should be reversed and it is so ordered.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.