W. B. HARBESON LUMBER COMPANY, a corporation, *Plaintiff in Error,* v. DUNCAN L. ANDERSON and ANNA ANDERSON, *Defendants in Error.*

136 So. 557.

En Banc.

Opinion filed August 6, 1931.

*E. C. Maxwell,* for Plaintiff in Error;

*S. K. Gillis,* for Defendants in Error.

DAVIS, Commissioner:—The defendants in error, hereinafter called the plaintiffs, who were father and sister respectively of one Walter Anderson, deceased, brought an action at law against the plaintiff in error to recover damages for the death of the said Walter Anderson. The defendant was engaged in the saw mill business and

operated a log road in connection with its mill. In its logging operations it was necessary from time to time to lay and pick up the track over which its log trains ran. In laying its track the defendant used what was termed a "pea picker." or crane, which would pick up a rail length section of track on a car behind the "pea picker" and lay it on the road bed in front. The section of track consisted of two rails and crossties to which the rails were loosely attached. The crossties, before being imbedded, had to be properly spaced, and it was the job of Walter Anderson to space the ties.

The "pea picker," which had formerly been used in connection with a steam shovel was fastened to the center of a railway car on which it rested with the crane projecting from one end, and the engine, boiler and wood box were on the other end to balance the crane and load as it would swing in operation on either side of the car at the election of its operator.

In swinging the crane around with a section of track to be placed in front of the machine, the entire machine including the flat car to which it was bolted, turned over, fatally injuring the said Walter Anderson, while he was engaged in the performance of his duty and due, as it is alleged, to the "wrongful act, negligence, carelessness and default of the defendant in that the said machine was too light to carry such heavy loads as the section then being moved was, in not having the said machine guyed or weighted down." The defendant pleaded not guilty and the cause was tried on that issue, the result being a verdict and judgment in favor of the plaintiffs. The defendant has assigned as error the refusal to give three charges requested by it, one of which was for a directed verdict in its favor, and also the denial of its motion for a new trial, which was predicated upon the usual grounds that the verdict was contrary to the law, the evidence, weight of evidence, charge of the court; that the damages

allowed were excessive and the refusal of the court to give the said three charges.

A master must not expose his servant when acting in the line of employment to dangers and hazards against which he may be protected by reasonable care and diligence on the part of the master. Among the positive duties resting upon the master to the servant is the obligation to exercise such reasonable care as prudence and the exigencies of the situation required in providing the servant with safe machinery and suitable instrumentalities, and a reasonably safe place in which to work. South Florida R. Co. v. Weese, 32 Fla. 212, 13 So. 436; Flowers v. Louisville & Nashville R. Co., 55 Fla. 603, 608, 46 So. 718, 720.

It is settled law here that there can be no recovery upon a cause of action, even though it be a tort, however meritorious it may be, or however satisfactorily proved, that is in substance variant from that which is pleaded by the plaintiff. Dexter v. Seaboard Air Line Ry., 55 Fla. 292, 45 So. 887; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 So. 318; Coons v. Pritchard, 69 Fla. 362, 68 So. 225, L. R. A. 1915F 558; South Atlantic Tel. & Tel. Co. vs. Shaw, 83 Fla. 463, 92 So. 277.

A new trial should not be granted for insufficiency of the evidence where the entire evidence does not show that the verdict is clearly wrong, or that the jury were not governed by the evidence. Welles v. Bryant, 68 Fla. 113, 66 So. 562.

On the other hand a verdict without supporting evidence will be set aside on proper motion. Florida Fire & Casualty Ins. Co. v. Hart, 73 Fla. 970, 75 So. 528; Petroutsa v. H. C. Shrader Co., 76 Fla. 574, 80 So. 486.

Where there is conflicting evidence on the issues made and the verdict is not manifestly against the weight of the evidence, a new trial should not be granted for insufficiency of the evidence (Burnett v. Soule, 78 Fla. 507,

83 So. 461), but a trial court should not sustain a verdict when it is not in accord with the manifest weight of the evidence or with the justice of the case. Stevens v. Tampa Electric Co., 81 Fla. 512, 88 So. 303; DeVane v. Bauman, 82 Fla. 346, 90 So. 192.

With the above-stated principles in mind we are called upon to determine whether or not the evidence in this cause was sufficient to support the verdict.

The evidence clearly shows that the injury occurred at a curve in the road and that the machine "turned the boom on the curve side or outside;" that it was not "guyed," though there were trees to which it could have been "guyed;" that the outside of the curve was the "built-up side and wasn't as firmly packed" as the other side; that "the machine had started to turn over a few times before this in laying on a soft place;" and the load would be dropped so that it would right itself. It was also shown on behalf of the plaintiff that certain links of a chain that were a part of a "caterpiller track" to which the machine had been attached when it was used in shoveling dirt and which had been in the wood box, were removed two or three weeks before the accident occurred; that this extra weight being opposite the boom had a tendency to keep it from turning over by the weight of the load carried by the boom, and that a "pretty while after, not so long either, I don't know just how long," the machine was on an iron frame, a loader frame and bigger wheels "which was a whole lot heavier than the one it was on when it turned over."

On behalf of the defendant the foreman on the job at the time of the injury and extra machine man testified in substance that he had been engaged in that particular work with that particular machine for three and a half years and that it had never capsized while loading or unloading with it; that it was designed to be heavy at the back to balance the crane with its load on the other side

and to keep it from turning over when swung out with a load on the low side; that the caterpiller pieces that were put in the wood box were removed three or four months before when the machine was taken to machine shop for repairs; that the man running it wanted them out so that it would hold more fuel; that the machine was made to balance without them, and that after the caterpiller links had been taken out the machine was used for three or four months before the accident; that after the accident it was used in the same condition for about four or five months before it was put on a new base and without any similar accident; that while it would swing to either side, they always swung to the high side (of track) or built-up side, except sometimes when they would have to swing to low side when there were trees, box cars or something in the way, and it would then sometimes tilt too far and they would let loose the load; that when they were on level ground or swinging to the high side, it never seemed to want to turn over or lift up at all; that the high side "wasn't as sound, and naturally did go down a little;" that it was put on the steel base because they had the steel truck and just "laid it on it. It needed repairs and instead of repairing or making a new one, it was easier to put it on this one" and that he had never heard that this was done because it had capsized or needed greater weight.

There is nothing in the record that conflicts with the foreman's testimony as detailed above, except as to how long after the pieces of "caterpillar" track had been removed from the wood box, the machine had been used before the accident occurred. Even if the "pea picker" had been used but two weeks before the injury in the condition that it was at the time of the injury and it was used thereafter in that condition for three or four months without having a similar accident, and it had never been

tilted except on the lower side of the track, it would seem that the master had used reasonable care and diligence to protect its servant Walter Anderson in the situation in which he was employed. If the accident was due to the fact, as probably was the case, that the dirt under the outside rail of the track was so soft that the load as it was swung out caused the track on that side to be lowered to such an extent that the machine toppled over, and the defendant was negligent in that respect, such negligence is not charged in the declaration.

The theory upon which the plaintiffs relied for a verdict in their behalf was that they were dependents. With no plea denying the dependency, such dependency is admitted by the plea of not guilty. Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 So. 516; Carter v. Bradley, 90 Fla. 524, 106 So. 350; Florida Motor Transp. Co. v. Hillman, 87 Fla. 512, 101 So. 31; Crandall's Florida Common Law Pract. 179.

The evidence shows that the deceased lived with his father and sister, and that he contributed in the neighborhood of $250.00 or $300.00 per year for the upkeep of the three. It is not shown that he was paying anything in addition to the amounts alleged to have been furnished by him for board and lodging. The sister was 42 years old. We are not advised as to her physical condition or ability to earn a living, or what means, if any, she had. All that we know is that she lived with her father and brother and presumably she looked after the house, did the cooking for the family and probably did such other chores as usually fall upon the housekeeper. We do not think that she was injured to such an extent that she should be awarded any substantial sum for the death of her brother.

Her father was 74 years of age at the time of the trial, and had a life expectancy of 7.1 years. He had had a hip dislocated about three years before and in consequence thereof could not perform labor so well as before

the accident. He possessed a farm of 120 acres, one mule, a few cows and hogs and at the time of the trial was living with another son, which would indicate that he did not have to look solely to his deceased son for help. He had two other sons and at least one married daughter, all of whom had families of their own.

"When the suit is brought, in such cases, by a person who bases his right to recover upon the fact that he is *a dependent upon the deceased for support*, then he must show, regardless of any ties of relationship, or strict *legal right* to such support, that he or she .was, either from the disability of age, or nonage, physical or mental incapacity, coupled with the lack of property means, *dependent in fact* upon the deceased for a support. When *adults* claim such dependence, there must be, because of some of the *disabilities* above mentioned, an *actual inability* to support themselves, and an actual dependence upon some one for support, coupled with a *reasonable expectation* of support, or with some reasonable claim to support from the deceased." Duval v. Hunt, 34 Fla. 85, 15 So. 876; Benoit v. Miami Beach Electric Co., 85 Fla. 396, 96 So. 158.

If it could be assumed that the contributions made by the deceased was for the sole benefit of the father, he, the father, would receive in 7.1 years—his life expectancy—at the rate of $250.00 per year, $1775.00, which when reduced to the then money value at the time of the trial would be still less than that sum. But the supplies furnished by the deceased were used by the three of them, (and the mother who had recently died) and in a sense were paid for by all, when we consider that the father furnished a lodging place and the sister doubtless did the cooking. In the assessment of damages in cases of this kind, the jury should determine merely the pecuniary loss to plaintiffs. In Duval vs. Hunt, supra, this Court said:

"The true and only test is, what sum will compensate the next of kin for the pecuniary loss sustained by them by the death of the deceased? or, in other words,

what, in view of all the facts and circumstances in evidence, was the probable pecuniary interest of the beneficiaries in the continuance of the life of the deceased?"

If we should concede that a judgment under the pleadings might be rendered under the evidence in favor of plaintiffs jointly in an amount greater than a nominal sum, the evidence falls far short of showing substantial injury to the sister, (Duval v. Hunt, supra; Louisville & Nashville R. Co. v. Jones, 50 Fla. 225, 39 So. 485; Benoit v. Miami Beach Electric Co., supra) and if it can be said that the father sustained pecuniary loss by reason of the death of the son, the evidence submitted did not furnish a sufficient basis for fixing the amount of his damage.

It is our opinion that the verdict is not sustained by the evidence on the issue made by the declaration and that the court erred in denying the motion for a new trial.

The judgment is reversed and the cause is remanded for a new trial.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing Opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the court below be, and the same is hereby, reversed and the cause remanded for a new trial.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS, J., agrees to the reversal.

BROWN, J., dissents in part and concurs in part.

ELLIS, J.: I agree to reversal because plaintiffs did not show by the evidence a cause of action in their favor.

BROWN, J., dissenting in part and concurring in part: I am inclined to think there was sufficient evidence as to the negligence charged to sustain the verdict, but that the amount of the verdict was excessive for the reasons stated in the opinion.