LEMAN BRAXTON v. STATE.

182 So. 276.

Opinion Filed June 15, 1938.

*Clyde E. Mayhall,* for Plaintiff in Error.

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

CHAPMAN, J.—On September 6, 1937, Hon. John H. Carter, Jr., State Attorney in and for Jackson County, Florida, filed an information in the Circuit Court of said County charging Leman Braxton with the larceny of two hogs, on July 3, 1937, the property of Josephine McDaniel. When arraigned the defendant entered a plea of not guilty, a jury was obtained, testimony submitted, argument of counsel had, and the jury, after being instructed by the court upon the law of the case, came into court and rendered a verdict of guilty. Motion for a new trial was made, which was overruled and denied by the trial court. The defendant was sentenced to the State Penitentiary for a period of two years. Writ of Error was obtained, transcript of the record perfected and the same is here for a review on the single assignment that "the court erred in denying the defendant's motion for a new trial and upon each and every ground thereof separately and severally."

The transcript of the record and the briefs filed present the single question as to the identity of the two hogs de-

scribed in the information. It will be observed that no other description of the hogs stolen appears in the record other than the "two hogs." Counsel for plaintiff in error made no effort, as shown by the record, to obtain a better description of the "two hogs." It would have been valuable to defendant's counsel during the progress of the trial. If an application had been made to the trial court for a bill of particulars or a better and more accurate description of the hogs, it is probable that the court, appreciating the seriousness of the situation, would have entered an order requiring the information prior to the trial. The application was not made and the responsibility therefor rested on counsel for the defendant below. .

The evidence is in conflict as to the date of birth of the alleged stolen hogs; the son stated they were littered in November, 1936, and during January, 1937, were taken to the "Scurlock place"; the owner stated the two hogs were littered in January 1937, in the "Scurlock field"; where they ranged with seven other pigs of the same litter until about planting time, when the nine pigs, their mother, and another sow were turned from the field into the woods, where they ranged with the other hogs until stolen on July 3, 1937, and by the defendant taken to Cottondale and sold. Mrs. Josephine McDaniel was the owner of the two hogs and she saw them frequently in and around the "Scurlock place," and she fed them at least twice per week, and her son, living a short distance from her, likewise fed them along with his hogs. Mrs. McDaniel and E. D. McDaniel, her son, saw the two black hogs in a lot of Mr. Paulk at Cottondale with some 20 other hogs and immediately called them and the two hogs went to her. The son identified the hogs, by their color, size, and the peculiarity of their "ears," and described them as "flop eared."

The defendant claimed to have traded some hay to a

man by the name of Thornton for the hogs, while the witness Thornton stated that he let the defendant have some hogs corresponding with the age, weight and size of the "two hogs," and while they ranged in the same range with the McDaniel hogs, on cross examination he could not recall that the hogs were black and "flop eared," that he traded him, but saw the defendant take some of the hogs away on July 3, 1937, which he thought he traded the defendant. While the question of identity of the hogs stolen is rather close, not having been marked, it does appear that the color, weight, size and place of range throw some light on the identity. The two hogs of Mrs. McDaniel alleged to have been stolen were not to be found on the range after July 3, 1937. She identified them in a lot at Cottondale among 20 other hogs—they knew her voice and came when called, they were black, unmarked, and "flop eared."

These were questions for the jury to determine from all the evidence adduced under appropriate instructions. We think the evidence sufficient to sustain the verdict. See Broxson v. State, 99 Fla. 1187, 128 So. 628. In the case of Welles v. Bryant, 68 Fla. 113, 66 So. 562, this court held that a new trial should not be granted for insufficiency of the evidence where the entire evidence does not show that the verdict is clearly wrong or that the jury was not governed by the evidence. See Harberson Lumber Co. v. Anderson, 102 Fla. 731, 136 So. 557. There appearing no error in the record, the judgment appealed from is hereby affirmed.

WHITFIELD, TERRELL, BROWN, and BUFORD, J. J., concur.